Donald D. SLATE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0301–CR–1.

Court of Appeals of Indiana.

Nov. 13, 2003.

John D. Fierek, Voyles, Zahn, Paul, Hogan & Merriman, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant-defendant Donald D. Slate ("Slate") appeals his conviction for operating a vehicle while intoxicated as a Class A misdemeanor.[1] Slate also appeals the trial court's finding that he committed a traffic infraction. We affirm.

### Issues

On appeal, Slate raises four issues, which we reorder and restate as:

I. Whether the trial court abused its discretion when it instructed the jury;

II. Whether the trial court abused its discretion by sua sponte removing a juror from the panel and replacing her with the alternate juror;

III. Whether his conviction for operating a vehicle while intoxicated is sufficiently inconsistent with his acquittal on the charge of public intoxication as to require that his conviction for operating a vehicle while intoxicated be set aside; and

IV. Whether the evidence is sufficient to support the trial court's finding that Slate committed a traffic infraction by failing to use his turn signal.

### Facts and Procedural History

On May 4, 2002, at approximately 1:20 a.m., Indianapolis Police Officer Benjamin Hunter ("Officer Hunter") observed Slate drive past him at a high rate of speed.

---

1. Ind.Code § 9–30–5–2.

Officer Hunter also witnessed Slate slow down, rather than come to a complete stop, at a red light. Slate then made a right-hand turn without using his turn signal. Slate was traveling in a highly populated area, "like a bar district." Tr. at 131. Indeed, Officer Hunter remarked that several people were walking on the sidewalks.

Because Slate was speeding, failed to stop at a red light, and failed to use his turn signal, Officer Hunter initiated a traffic stop. When Officer Hunter approached Slate's vehicle, Slate rolled down his window and Officer Hunter "smelled a strong odor of alcohol." *Id.* at 133. Slate "fumbled with his wallet" for approximately a minute or a minute and a half as he attempted to present Officer Hunter with a second form of identification. *Id.* Officer Hunter noticed that Slate's eyes were red and bloodshot and that his speech was slow and deliberate.

At the scene of the traffic stop, Officer Hunter administered two field sobriety tests: (1) the one-legged stand test; and (2) the nine-step walk and turn test. Slate failed both tests. Officer Hunter then read Slate the warning of the Indiana Implied Consent Law and Slate agreed to submit to a chemical breath test. The results of the breath test revealed that Slate had a Blood Alcohol Concentration ("BAC") of .12 percent.

On May 6, 2002, the State charged Slate with two counts of operating a vehicle while intoxicated—Count I as a Class A misdemeanor pursuant to Indiana Code Section 9–30–5–2 [2] and Count II as a Class C misdemeanor under Indiana Code Section 9–30–5–1(a).[3] The State also charged Slate with public intoxication as a Class B misdemeanor.[4] At Slate's jury trial, the State tendered and the trial court gave, over Slate's objection, Final Instruction Number Five ("Instruction Five"), which provides as follows:

> Endangerment means that [Slate's] condition or manner of operating the vehicle could have endangered any person, including the public, the police, or [Slate.] Thus, proof that [Slate's] condition rendered operation of the vehicle unsafe is sufficient to establish endangerment.

Appellant's App. at 60. In addition, following the presentation of the evidence, Slate tendered a proposed final jury instruction on the offense of reckless driving, which the trial court refused because the offense of reckless driving is not a lesser-included offense of operating a vehicle while intoxicated. Before closing arguments began, the State brought to the trial court's attention that a Juror had periodically dozed off during the trial. Noting that the Juror had fallen asleep "no less than fifteen or twenty times," the trial court replaced the Juror with the alternate juror, over Slate's objection. Tr. at 304.

At the conclusion of the trial, the jury found Slate guilty of operating a vehicle

---

**2.** Indiana Code Section 9–30–5–2 provides that:

 (a) Except as provided in subsection (b), a person who operates a vehicle while intoxicated commits a Class C misdemeanor.

 (b) An offense described in subsection (a) is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person.

**3.** Indiana Code Section 9–30–5–1 provides, in pertinent part, that:

(a) A person who operates a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol but less than fifteen-hundredths (0.15) gram of alcohol per:

 (1) one hundred (100) milliliters of the person's blood; or

 (2) two hundred ten (210) liters of the person's breath;

commits a Class C misdemeanor.

**4.** IND.CODE § 7.1–5–1–3.

while intoxicated as a Class A misdemeanor and as a Class C misdemeanor. The jury found Slate not guilty of public intoxication. The trial court merged the Class C misdemeanor verdict into the Class A misdemeanor verdict and entered a judgment of conviction against Slate for operating a vehicle while intoxicated as a Class A misdemeanor. The trial court also found that Slate committed the infraction of failure to signal, in violation of Indiana Code Section 9–21–8–24, but imposed no penalty for such infraction. Slate now appeals.

### Discussion and Decision

#### I. The Final Instructions

■■■■ Slate first argues that the trial court abused its discretion by improperly instructing the jury. The giving of jury instructions is a matter within the sound discretion of the trial court, and we review the trial court's refusal to give a tendered instruction for an abuse of that discretion. *McCarthy v. State*, 751 N.E.2d 753, 755 (Ind.Ct.App.2001), *trans. denied.* However, an abuse of discretion does not occur if the instructions, considered as a whole and in reference to each other, do not mislead the jury as to the applicable law. *Young v. State*, 696 N.E.2d 386, 389–90 (Ind. 1998).

In the present case, Slate contends that the trial court improperly instructed the jury regarding the offense of operating a vehicle while intoxicated by giving the endangerment instruction, i.e., Instruction Five. Slate also asserts that the trial court abused its discretion by refusing to give an instruction on reckless driving because it is a lesser-included offense of operating a vehicle while intoxicated. We address each of these arguments separately.

#### A. Endangerment Instruction

■■■■ First, Slate argues that the trial court improperly instructed the jury on endangerment as an element of operating a vehicle while intoxicated. Specifically, Slate attacks the trial court's giving of Instruction Five, which provides as follows:

> Endangerment means that [Slate's] condition or manner of operating the vehicle could have endangered any person, including the public, the police, or [Slate.] *Thus, proof that [Slate's] condition rendered operation of the vehicle unsafe is sufficient to establish endangerment.*

Appellant's App. at 60 (emphasis added). In reviewing a trial court's decision to give a tendered jury instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Wooley v. State*, 716 N.E.2d 919, 926 (Ind.1999).

Here, Slate maintains that the emphasized portion of Instruction Five incorrectly states the law. To support his argument, Slate asserts that Instruction Five was based upon case law interpreting Indiana Code Section 9–30–5–2 before it was amended in 2001. Slate further argues that Instruction Five "essentially informed the jury that [it] could find endangerment based on the manner of operating a vehicle *or* based on [*Slate's*] *condition* if such rendered operation of the vehicle unsafe." Appellant's Br. at 13 (emphasis added). As such, Slate's argument continues, the trial court abused its discretion by giving Instruction Five to the jury. We disagree.

Prior to 2001, Indiana Code Section 9–30–5–2 provided that: "A person who operates a vehicle while intoxicated commits a Class A misdemeanor." Moreover, Indiana Code Section 9–13–2–86 provided that:

"Intoxicated means under the influence of:

(1) alcohol;

\* \* \* \* \*

so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person."

Interpreting these statutes, we have held that the endangerment element of Indiana Code Sections 9–30–5–2 and 9–13–2–86 indicates the level of impairment and the extent of lost faculties that must be shown to establish intoxication and to obtain a conviction. *See, e.g., State v. Krohn,* 521 N.E.2d 374, 377 (Ind.Ct.App.1988). In addition, we have held that endangerment was proved by evidence showing that the defendant's condition or operating manner could have endangered any person, including the public, the police, or the defendant. *Blinn v. State,* 677 N.E.2d 51, 54 (Ind.Ct. App.1997). Moreover, under the pre 2001 statutory scheme, we have held that proof that the defendant's condition rendered operation of the vehicle unsafe is sufficient to establish the endangerment element of the offense. *State v. Rans,* 739 N.E.2d 164, 168 (Ind.Ct.App.2000).

However, in 2001, the legislature amended the statutory scheme upon which these cases rely. As amended, Indiana Code Section 9–30–5–2 provides that:

(a) Except as provided in subsection (b), a person who operates a vehicle while intoxicated commits a Class C misdemeanor.

(b) An offense described in subsection (a) is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person.

Thus, pursuant to the 2001 amendment of Indiana Code Section 9–30–5–2, only the enhanced offense of operating a vehicle while intoxicated requires proof that the defendant operated a vehicle in a manner that endangered a person.

Similarly, in defining the term "intoxicated," the Indiana legislature deleted the "to an extent that endangers a person" language. Accordingly, Indiana Code Section 9–13–2–86, as amended, provides that:

"Intoxicated" means under the influence of:

(1) alcohol;

\* \* \* \* \*

so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.

Slate maintains that under the 2001 amendments, the "finder of fact can only view the manner in which the person operated the vehicle when deciding whether the [S]tate has proven endangerment and thus proven the enhanced operating while intoxicated offense." Appellant's Br. at 12. Slate further contends that "[b]ecause 'endangerment' was removed from the definition of intoxication, the defendant's condition, i.e., intoxication, can no longer be used to prove endangerment." *Id.* We have found no other Indiana case that has addressed whether, under the 2001 amendments, proof that a defendant's condition rendered operation of the vehicle unsafe is sufficient to establish the endangerment required by Indiana Code Section 9–30–5–2(b). However, we note that by the plain and unambiguous language of Indiana Code Sections 9–30–5–2 and 9–13–2–86, a person can be convicted of operating a vehicle while intoxicated as a Class C misdemeanor if he or she operates a vehicle while under the influence of alcohol so that there is an impaired condition of thought and action and the loss of normal control of the person's faculties. A person can be convicted of operating a vehicle while intoxicated as a Class A misdemeanor if, in

addition, that person operated a vehicle in a manner that endangered a person. Thus, under the current statutory scheme, Instruction Five would clearly be an improper statement of the law if Slate were charged pursuant to Indiana Code Section 9–30–5–2(a) because endangerment is no longer an element of operating a vehicle while intoxicated as a Class C misdemeanor. However, Slate was charged and tried under Indiana Code Section 9–30–5–2(b). The element of endangerment is still appropriate for determining the offense of operating a vehicle while intoxicated as a Class A misdemeanor.

■ Further, there is no evidence that, by amending Indiana Code Section 9–30–5–2, the legislature intended to alter the means of proving the endangerment element. Accordingly, pursuant to Indiana Code Section 9–30–5–2(b), as amended, endangerment may be demonstrated by evidence that the defendant's condition or operating manner could have endangered any person, including the public or the defendant. *See, e.g., Blinn,* 677 N.E.2d at 54. In addition, proof that the defendant's condition rendered operation of the vehicle unsafe is sufficient to establish the endangerment element of operating a vehicle while intoxicated as a Class A misdemeanor. *See, e.g., Rans,* 739 N.E.2d at 168. Accordingly, Instruction Five is a proper statement of the law. As such, the trial court did not abuse its discretion by giving Instruction Five to the jury.

### B. Reckless Driving Instruction

■ Slate also argues that the trial court abused its discretion by refusing to give the jury his tendered instruction on reckless driving as a lesser-included offense of operating a vehicle while intoxicated. A defendant's request for a jury instruction on a lesser-included offense is scrutinized by the trial court according to the three-part test enunciated in *Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995). Under this three-part analysis, the trial court must: (1) determine whether the lesser-included offense is inherently included in the crime charged; if not, (2) determine whether the lesser-included offense is factually included in the crime charged; and, if either, (3) determine whether a serious evidentiary dispute exists whereby the jury could conclude that the lesser offense was committed but not the greater. *See id.* The trial court should grant the defendant's request for a lesser-included offense instruction if it answers the third inquiry affirmatively. *See id.* at 567. Indeed, "it is reversible error not to give an instruction, when requested, on the inherently or factually included offense." *Id.*

■ Here, the trial court refused to give the reckless driving instruction tendered by Slate because "reckless driving is not inherently or factually included" in the offense of operating a vehicle while intoxicated. Tr. at 300. On appeal, Slate concedes that the offense of reckless driving is not an inherently included offense of operating a vehicle while intoxicated. However, he contends that reckless driving is factually included in the charged offense of operating a vehicle while intoxicated. To determine whether an alleged lesser-included offense is factually included in the crime charged, the trial court must compare the statute that defines the alleged lesser-included offense with the charging instrument in the case. *Wright v. State,* 658 N.E.2d at 567. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser-included offense, then the alleged lesser-included offense is factually included in the crime charged. *Id.* at 566–67.

■ In the present case, Slate was charged with operating a vehicle while intoxicated, a Class A misdemeanor, as follows: "On or about May 4, 2002, ... [Slate] did operate a vehicle in a manner that endangered a person, while intoxicated." Appellant's App. at 16. The crime of reckless driving, a Class B misdemeanor, is defined, in relevant part, as a person who operates a vehicle and who recklessly:

(1) drives at such an unreasonably high rate of speed or at such an unreasonably low rate of speed under the circumstances as to:

(A) endanger the safety or the property of others; or

(B) block the proper flow of traffic;

IND.CODE § 9–21–8–52.

As charged, the offense of reckless driving is not factually included in the crime of operating a vehicle while intoxicated because the means used to commit the crime of operating a vehicle while intoxicated does not include all of the elements of the alleged lesser-included offense of reckless driving. Indeed, the charging instrument merely alleges that Slate operated a vehicle while intoxicated in a manner that endangered a person. It does not, however, allege that Slate drove at such an unreasonable high rate of speed that he endangered the safety of others.

Because the alleged lesser-included offense of reckless driving is not inherently or factually included in the charged offense, the trial court properly refused to give the requested instruction on reckless driving. *See, e.g., Taylor v. State,* 659 N.E.2d 1054, 1061 (Ind.Ct.App.1995). Accordingly, we find no abuse of discretion and do not need to proceed to step three of the *Wright* inquiry.

## II. Removing a Juror

The next issue is whether the trial court abused its discretion by sua sponte removing a juror from the panel and replacing her with the alternate juror. Indiana Trial Rule 47(B), which governs the role of alternate jurors, provides, in pertinent part, that:

... Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities and privileges as the regular jurors.

■ The decision to replace a juror with an alternate is reviewed for an abuse of discretion. *Jervis v. State,* 679 N.E.2d 875, 881–82 (Ind.1997). We give trial courts significant leeway under Indiana Trial Rule 47(B) to determine whether to replace a juror with an alternate because they see jurors firsthand and are in a much better position to assess a juror's ability to serve without bias or intimidation and decide the case according to law. *Id.* A defendant is entitled as a matter of right only to an impartial jury, and not to one of "his precise choosing where the issue is merely replacing a regular juror with an alternate." *Id.* at 882; *see also Whitehead v. State,* 500 N.E.2d 149, 153 (Ind.1986). Indeed, alternate jurors are presumed to be fair and equally qualified as other jurors. *French v. State,* 521 N.E.2d 346, 349 (Ind.1988).

■ In the present case, Slate argues that the trial court abused its discretion by sua sponte replacing the Juror for inattentiveness. To support this argument, Slate relies upon *Hall v. Eastland Mall,* 769 N.E.2d 198, 203–04 (Ind.Ct.App.2002). There, the plaintiffs contended that be-

cause some jurors had fallen asleep during the presentation of evidence, they deserved a new trial. *Id.* at 203. First, we observed that the plaintiffs had waived any issue of the jury's alleged misconduct because they failed to assert a contemporaneous objection to such conduct at trial. *Id.* Waiver notwithstanding, however, we noted that the plaintiffs were not entitled to a new trial because they were unable to show that the jurors were actually inattentive and that such inattentiveness resulted in actual prejudice to the complaining party. *Id.* at 203–04.

Slate relies upon our analysis in *Hall* to assert that "the controlling law clearly establishes that juror inattentiveness or jury sleepiness is insufficient to prejudice the defendant, thus it logically follows that it is insufficient to prejudice the [S]tate." Appellant's Br. at 9. Slate also argues that inattentiveness alone did not prevent the Juror from performing her duty as required under Indiana Trial Rule 47(B). Accordingly, Slate maintains that the trial court abused its discretion when it replaced the Juror because there was no proof that the Juror was inattentive or that such inattentiveness would have prejudiced a party. We disagree.

The record before us demonstrates that prior to the parties' closing arguments, the State brought to the trial court's attention that a juror had periodically dozed off during the trial. Concerned that the Juror might have missed some of the evidence when she fell asleep "no less than fifteen or twenty times" during the trial, the trial court replaced the Juror with the alternate juror, over Slate's objection. Tr. at 304. As previously mentioned, the trial court has the discretion to determine whether to replace a juror with an alternate juror. From this record, the trial court acted within its discretion when it

replaced the Juror. Accordingly, we find no error.

### III. Consistency of The Verdicts

The third issue is whether Slate's conviction for operating a vehicle while intoxicated as a Class A misdemeanor is sufficiently inconsistent with his acquittal on the charge of public intoxication as to require that his conviction for operating a vehicle while intoxicated be set aside. In Indiana, where the trial of a defendant results in acquittal upon some charges and convictions upon others, the verdicts will survive a claim of inconsistency where the evidence is sufficient to support the convictions. *Mitchell v. State*, 726 N.E.2d 1228, 1239 (Ind.2000). Indeed, our supreme court has held that:

> [I]t is not within our province to attempt to interpret the thought process of the jury in arriving at their verdict.... The reason for allowing the jury to render verdicts, that are seemingly inconsistent, inheres within our system of jurisprudence. The jurors are the triers of fact, and in performing this function, they may attach whatever weight and credibility to the evidence as they believe is warranted.

*Hicks v. State*, 426 N.E.2d 411, 414 (Ind. 1981).

However, we will review verdicts to determine whether they are consistent. *Edwards v. State*, 730 N.E.2d 1286, 1290 (Ind.Ct.App.2000). Be that as it may, perfect logical consistency in verdicts is not required and only extremely contradictory and irreconcilable verdicts warrant corrective action. *Jones v. State*, 689 N.E.2d 722, 724 (Ind.1997); *see also Butler v. State*, 647 N.E.2d 631, 636 (Ind. 1995) ("[T]his court will 'review findings and verdicts to determine whether they are consistent; however, perfect logical consistency is not demanded and only ex-

tremely contradictory and irreconcilable verdicts warrant corrective action by this Court.' ").

In the present case, Slate argues that the jury's verdicts regarding operating a vehicle while intoxicated and public intoxication are inconsistent because the conviction for operating a vehicle while intoxicated as a Class A misdemeanor necessitated a finding by the jury that Slate operated a vehicle in a manner that endangered a person while he was intoxicated while the jury's acquittal of Slate on the charge of public intoxication required the jury to find that Slate was not intoxicated in a public place. We find this argument unpersuasive.

To convict Slate of operating a vehicle while intoxicated as a Class A misdemeanor, the State had to prove the following elements: (1) Slate (2) operated a vehicle (3) in a manner that endangered a person (4) while intoxicated. *See* Appellant's App. at 16; *see also* IND.CODE § 9–30–5–2. Similarly, the elements of public intoxication are: (1) Slate (2) was in a state of intoxication (3) while in a public place or place of public resort. *See* Appellant's App. at 15; *see also* IND.CODE § 7.1–5–1–3. Moreover, we recognize that in *Miles v. State*, 247 Ind. 423, 425, 216 N.E.2d 847, 849 (1966), our supreme court held that a person in a motor vehicle stopped along the traveled portion of a highway was in a public place. *See also Atkins v. State*, 451 N.E.2d 55, 56 (Ind.Ct.App.1983).

At first blush, the verdicts at issue appear wholly inconsistent because a determination that Slate operated a vehicle while intoxicated as a Class A misdemeanor seems to require a finding that Slate was publicly intoxicated, i.e., intoxicated in his vehicle on a public roadway. However, in the case before us, the trial court gave two separate jury instructions defining the term "intoxicated." In Final Instruction

Number Four, which immediately followed the instruction delineating the elements of operating a vehicle while intoxicated as a Class A misdemeanor, the trial court defined the term "intoxicated" as "under the influence of alcohol, such that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." *Id.* at 58. Subsequently, however, directly after the trial court instructed the jury regarding the elements of the offense of public intoxication, the trial court read Final Instruction Number Fourteen as follows:

> "Intoxicated" means under the influence of alcohol, such that there is an impaired condition of thought and action to such a marked degree that the intoxicated person has a significant loss of normal physical and mental faculties.

*Id.* at 69.

These two definitions of the term intoxicated are different. From these definitional instructions, it is entirely conceivable that the jury believed that Slate was under the influence of alcohol, such that his thoughts and actions were impaired and he had a loss of normal control of his faculties, but that this impaired condition was not to such a marked degree that Slate had a *significant* loss of normal physical and mental faculties. It is also possible that the jury associated: (1) the definition of intoxicated contained in Final Instruction Number Four with the offense of operating a vehicle while intoxicated as instructed in Final Instruction Number Three; and (2) the definition of intoxicated contained in Final Instruction Fourteen with the offense of public intoxication as described in Final Instruction Number Thirteen. Because of the different definitions of the term "intoxicated," and because neither party objected to Final Instruction Numbers Four and Fourteen, the jury's guilty verdict for the offense of op-

erating a vehicle while intoxicated as a Class A misdemeanor is not wholly inconsistent with its acquittal of Slate on the charge of public intoxication.

### IV. Sufficiency of the Evidence

 Lastly, Slate argues that the evidence is insufficient to support the trial court's finding that Slate committed a traffic infraction by failing to use his turn signal. When reviewing a challenge to the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of witnesses. *See Preston v. State,* 735 N.E.2d 330, 332 (Ind.Ct.App.2000). Rather, we look to the evidence that best supports the judgment and all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value supporting the trial court's judgment, it will not be overturned. *Id.* (quotations and citations omitted). We further observe that traffic infractions are civil, rather than criminal, in nature, and the State must prove the commission of the infraction by only a preponderance of the evidence. *Id.*

Slate argues that the evidence is insufficient to support the trial court's finding that he made a right-hand turn without using his turn signal. Before we address this argument, we note that the citation Slate received from Officer Hunter indicated that Slate had committed the infraction of "[f]ailure to signal" in violation of Indiana Code Section "9–21–8–24." Appellant's App. at 190. However, at trial, Officer Hunter testified that Slate committed the infraction of Indiana Code Section 9–21–8–25. However, our review of the record demonstrates that the trial court found Slate guilty of committing the charged infraction, i.e., Indiana Code Section 9–21–8–24.

Indiana Code Section 9–21–8–24 provides that:

A person may not:

 (1) slow down or stop a vehicle;

 (2) turn a vehicle from a direct course upon a highway; or

 (3) change from one (1) traffic lane to another;

unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal in the manner provided in sections 27 through 28 of this chapter if any other vehicle may be affected by the movement.

In *Steward v. State,* 436 N.E.2d 859, 863 (Ind.Ct.App.1982), we held that a driver may be found guilty of unsafe lane movement pursuant to Indiana Code Section 9–21–8–24 where there were no pedestrians or vehicles in the area at the time in question. There, the defendant argued that his actions while driving did not fall within the proscription of Indiana Code Section 9–4–1–78 because there is no indication that his erratic driving would have affected any pedestrians or other vehicles. *Id.* We rejected this argument because it "ignores the preceding half of the statute which clearly proscribes any lane movement until it can be done with reasonable safety regardless of the presence of pedestrians or other vehicles." *Id.*

 Similarly, here, we reject Slate's argument that the evidence is insufficient to support the trial court's finding that he committed the infraction because there were no pedestrians or other vehicles affected by his driving. Rather, we note that Officer Hunter testified that he observed Slate drive past him at a high rate of speed, slow down, rather than come to a complete stop, at a red light, and make a right-hand turn without using his turn sig-

nal. This evidence supports a finding that Slate turned his vehicle in such a manner that could not be made with reasonable safety. Accordingly, the evidence is sufficient to support the trial court's finding that Slate committed the charged infraction.

■ Alternatively and because Officer Hunter testified that he charged Slate with an infraction pursuant to Indiana Code Section 9–21–8–25, we observe that the evidence is also sufficient to support an infraction under that code section. Indiana Code Section 9–21–8–25, which governs signaling, provides, in relevant part, that:

> A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes.

Moreover, we have held that signaling is required even when no other vehicle will be affected by the turn. *State v. Geis,* 779 N.E.2d 1194, 1196 (Ind.Ct.App.2002), *trans. denied.* In the present case, Officer Hunter testified that he witnessed Hunter's vehicle, which was originally traveling eastbound on Louisiana Street, turn "south bound without signaling onto Meridian Street." Tr. at 131. This evidence is sufficient to support the trial court's finding that Slate committed the infraction of failing to signal.

For the foregoing reasons, we affirm Slate's conviction for operating a vehicle while intoxicated as a Class A misdemeanor and the trial court's finding that Slate committed a traffic infraction by failing to use his turn signal.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.