Brian A. STALEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 03A01–0804–CR–183.

Court of Appeals of Indiana.

Nov. 5, 2008.

Transfer Denied Jan. 8, 2009.

Donald J. Dickherber, Columbus, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Brian A. Staley (Staley), appeals his conviction for operating a vehicle while intoxicated endangering a person, a Class A misdemeanor, Ind. Code § 9–30–5–2 and his adjudication as an habitual substance offender, I.C. § 35–50–2–10.

We affirm.

### ISSUES

Staley raises two issues on appeal, which we restate as follows:

(1) Whether the trial court properly instructed the jury on endangerment; and

(2) Whether the State presented sufficient evidence to support Staley's conviction of operating a vehicle

while intoxicated endangering a person beyond a reasonable doubt.

## FACTS AND PROCEDURAL HISTORY

The facts favorable to the judgment are as follows. Shortly before 3:00 a.m. on November 19, 2005, Bartholomew County Sheriff's Deputy David Steinkoenig (Deputy Steinkoenig) was driving southbound on Highway 11, just north of Garden City, Indiana. When he approached the Hacienda Lounge, a local bar, he noticed a GEO Tracker, later determined to be driven by Staley, driving at a "high rate of speed" towards the exit in the bar's parking lot. (Transcript p. 101). Although Staley had plenty of time to pull out of the parking lot ahead of Deputy Steinkoenig, he waited until after the Deputy had passed. Finding this odd, the Deputy turned into a parking lot down the street, waited for Staley to pass him, and then followed him.

Staley continued driving at a high rate of speed. Just as Deputy Steinkoenig was catching up, Staley pulled into a driveway and switched off his lights. Because Deputy Steinkoenig believed Staley was trying to elude him, the Deputy continued westbound for another 100 yards and pulled into a school parking lot down the street. The Deputy turned off his lights and observed Staley. Staley never exited his car. After five to ten minutes, Staley pulled back out onto the street and drove in the other direction without switching his lights on. Deputy Steinkoenig caught up with Staley and activated his lights just as Staley turned into another driveway.

As soon as Staley opened his door, Deputy Steinkoenig smelled a "very strong" odor of alcohol. (Tr. p. 131). The Deputy asked Staley for his driver's license and registration, and Staley "fumbled around" for his wallet, as if he "did not have control of his hands," before finding his license. (Tr. p. 131). When Deputy Steinkoenig asked him where he was coming from, Staley responded that he came from his father's house in Ogilville, and was silent when the Deputy informed him that he saw him leaving the Hacienda Lounge. Staley denied having pulled into a driveway previously and would not say whose driveway he was in at the time he was pulled over.

After checking and finding that Staley had a valid driver's license, Deputy Steinkoenig asked Staley to step out of the car. Staley had some difficulty getting out of the vehicle, and once outside, he leaned against the car. The Deputy asked Staley if he would perform a field sobriety test or take a portable breathalyzer test. Staley refused. Deputy Steinkoenig read Staley the implied consent law and asked him to submit to a chemical test at least three times, but Staley refused each time. Staley's eyes were bloodshot, his speech was slurred, and his balance was poor. Deputy Steinkoenig placed Staley under arrest.

Sheriff's Deputy Jason Williams (Deputy Williams) arrived on the scene as backup. He noticed that Staley was agitated and was leaning against the vehicle. Deputy Williams also smelled a "strong odor of alcohol[ic] beverage coming from his breath." (Tr. p. 93). The Deputies asked Staley to have a seat in the back of Deputy Steinkoenig's patrol car. However, Staley complained of shoulder pain and informed the Deputies that he could not get into the car. Ultimately, the Deputies placed Staley in the patrol car, face down on the back seat with his hands cuffed behind his back.

On December 5, 2005, the State filed an Information charging Staley with Count I, operating a vehicle while intoxicated en-

dangering a person, a Class A misdemeanor, I.C. § 9–30–5–2.[1] On July 26, 2006, the State amended the Information, adding Count II, intimidation, a Class D felony, I.C. § 35–45–2–1(a)(2) and Count III, habitual substance offender, I.C. § 35–50–2–10. On March 10, 2008, a jury trial was held. At the close of the evidence, the jury found Staley guilty of operating a vehicle while intoxicated endangering a person and found him to be an habitual substance offender. The jury found Staley not guilty of intimidation. On April 7, 2008, during a sentencing hearing, the trial court sentenced Staley to one year executed, enhanced by three years for the habitual offender adjudication. The trial court suspended two years of the habitual offender sentence.

Staley now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Jury Instruction

Staley contends that the trial court abused its discretion when it instructed the jury on the definition of "endangerment" for purposes of the operating a vehicle while intoxicated endangering a person statute. It is well established by our court that instructing the jury is within the discretion of the trial court. *Perez v. State*, 872 N.E.2d 208, 210 (Ind.Ct.App. 2007).

However, Staley admits that he failed to object to the jury instruction. Generally, a contemporaneous objection is required to preserve an issue for appeal.

*See Anderson v. State*, 653 N.E.2d 1048, 1051 (Ind.Ct.App.1995). Seeking to avoid procedural default, Staley urges us that his claim is not foreclosed because the trial court's tendering of the jury instruction constituted fundamental error. The fundamental error doctrine is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind.2002), *reh'g denied*. When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, and other instructions. *Id.* There is no resulting due process violation where all such information, considered as a whole does not mislead the jury as to a correct understanding of the law. *Id.*

Here, Staley specifically contests the trial court's Instruction Six, which provided "[e]ndangering means that the Defendant's condition *or* operating manner could have endangered any person, including the public, the police, or the operator." (Appellant's App. p. 79) (emphasis added). Staley maintains that this instruction incorrectly states the law as it was based upon case law interpreting I.C. § 9–30–5–2 before it was amended in 2001.

Prior to 2001, Indiana Code section 9–30–5–2 provided that: "A person who operates a vehicle while intoxicated commits

---

**1.** We note that the Information charges Staley with operating a vehicle while intoxicated endangering a person, but incorrectly cites to I.C. § 9–30–5–2(a) instead of I.C. § 9–30–5–2(b). The crime in the Information tracks the wording of I.C. § 9–30–5–2(b). Staley does not dispute that he was charged with operating while intoxicated endangering a person, as a Class A misdemeanor, pursuant to I.C. § 9–30–5–2(b).

a Class A misdemeanor." Moreover, Indiana Code section 9–13–2–86 provided that:

Intoxicated means under the influence of:

(1) alcohol;

* * *

so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person.

Interpreting these statutes, we held that the endangerment element of Indiana Code sections 9–30–5–2 and 9–13–2–86 indicated the level of impairment and the extent of lost faculties that must be shown to establish intoxication and to obtain a conviction. *See, e.g., State v. Krohn,* 521 N.E.2d 374, 377 (Ind.Ct.App.1988). In addition, we held that endangerment was established by evidence showing that the defendant's condition or operating manner could have endangered any person, including the public, the police, or the defendant. *Blinn v. State,* 677 N.E.2d 51, 54 (Ind.Ct. App.1997). Moreover, under the pre–2001 statutory scheme, we held that proof that the defendant's condition rendered operation of the vehicle unsafe is sufficient to establish the endangerment element of the offense. *State v. Rans,* 739 N.E.2d 164, 168 (Ind.Ct.App.2000), *trans. denied.*

However, in 2001, the legislature amended the statutory scheme upon which these cases rely. As amended, Indiana Code section 9–30–5–2 provides as follows:

(a) Except as provided in subsection (b), a person who operates a vehicle while intoxicated commits a Class C misdemeanor.

(b) An offense described in subsection (a) is a Class A misdemeanor if the

person operates a vehicle in a manner that endangers a person.

Thus, pursuant to the 2001 amendment of Indiana Code section 9–30–5–2, only the enhanced offense of operating a vehicle while intoxicated requires proof that the defendant operated a vehicle in a manner that endangered a person.

Similarly, in defining the term 'intoxicated,' the Indiana legislature deleted the "to an extent that endangers a person" language. Accordingly, Indiana Code section 9–13–2–86, as amended, provides that:

Intoxicated means under the influence of:

(1) alcohol

* * *

so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.

Staley now maintains that pursuant to the 2001 amendments, endangerment cannot be shown solely by the defendant's condition—that he was intoxicated—but only by the manner in which he operated the vehicle.

In *Slate v. State,* 798 N.E.2d 510 (Ind. Ct.App.2003), we considered and rejected the same argument Staley presents us today. In *Slate,* the contested jury instruction read, "[e]ndangerment means that [Slate's] condition or manner of operating the vehicle could have endangered any person, including the public, the police, or [Slate]." *Id.* at 514. After discussing the amendments to both Indiana Code Sections 9–30–5–2 and 9–13–2–86, we stated that

by the plain and unambiguous language of Indiana Code Sections 9–30–5–2 and 9–13–2–86, a person can be convicted of

operating a vehicle while intoxicated as a Class C misdemeanor if he or she operates a vehicle while under the influence of alcohol so that there is an impaired condition of thought and action and the loss of normal control of the person's faculties. A person can be convicted of operating a vehicle while intoxicated as a Class A misdemeanor if, in addition, that person operated a vehicle in a manner that endangered a person. Thus under the current statutory scheme, [the jury instruction] would clearly be an improper statement of the law if Slate were charged pursuant to Indiana Code Section 9–30–5–2(a) because endangerment is no longer an element of operating a vehicle while intoxicated as a Class C misdemeanor. However, Slate was charged and tried under Indiana Code Section 9–30–5–2(b). The element of endangerment is still appropriate for determining the offense of operating a vehicle while intoxicated as a Class A misdemeanor.

*Id.* at 515–16. Additionally, we held that

There is no evidence that, by amending Indiana Code Section 9–30–5–2, the legislature intended to alter the means of proving the endangerment element. Accordingly, pursuant to Indiana Code Section 9–30–5–2(b), as amended, endangerment may be demonstrated by evidence that the defendant's condition or operating manner could have endangered any person, including the public or the defendant.

*Id.* at 516.

We agree with the State that the 2001 amendment to the statute created a new, less serious offense of Class C misdemeanor operating while intoxicated that did not include the endangerment requirement. In order to do so, the Legislature had to eliminate the "to an extent that endangers a person" language from the definition of intoxicated. Otherwise, the endangerment requirement would have continued to apply to both the Class A and Class C misdemeanor offense, making the existence of a new Class C misdemeanor meaningless. However, this newly created misdemeanor does not alter the way in which endangerment is established for the Class A misdemeanor, where the requirement continues to exist as it always did.

As Staley does not present us with any new arguments that persuade us to revisit our opinion in *Slate,* we conclude, in light of *Slate,* that the trial court tendered a proper instruction to the jury. As such, we do not find that the trial court abused its discretion, let alone, committed fundamental error.

## II. *Sufficiency of the Evidence*

■ Next, Staley contends that the State failed to present sufficient evidence to support his conviction of operating a vehicle while intoxicated endangering a person beyond a reasonable doubt. Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State,* 872 N.E.2d 208, 212–13 (Ind.Ct.App. 2007), *trans. denied.* We will consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* at 213. A conviction may be based upon circumstantial evidence alone. *Id.* Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

■ Specifically, Staley asserts that there was no evidence of probative value from which the jury could have found that Staley was either intoxicated or operating his vehicle in a manner that endangered a person. A person commits operating a vehicle while intoxicated as a Class A misdemeanor when he operates a vehicle while intoxicated "in a manner that endangers a person." *See* I.C. § 9–30–5–2(b). Intoxication is defined by statutes as being "under the influence of: (1) alcohol, . . . so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." I.C. § 9–13–2–86. Impairment can be established by evidence of (1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; (7) slurred speech. *Fields v. State*, 888 N.E.2d 304, 307 (Ind.Ct.App.2008).

Here, Officer Steinkoenig noticed Staley leave the Hacienda Lounge at approximately 3:00 a.m. Initially, Staley appeared to engage in several attempts to elude Deputy Steinkoenig: he waited for the Deputy to drive past the bar's parking lot before pulling out; he stopped in a random driveway, waited while the Deputy drove past, and then waited for several minutes more before driving off in the opposite direction. After pulling him over, Deputy Steinkoenig smelled a "very strong" odor of alcohol. (Tr. p. 131). Deputy Williams concurred with this observation, and specifically testified that he smelled the odor coming from Staley's breath. Deputy Steinkoenig added that Staley had bloodshot eyes and his speech was slurred. The Deputy testified that when asked to produce his driver's license, Staley fumbled around for his wallet as if he "didn't have

full control of his hands." (Tr. p. 131). The record reflects that when Staley exited his vehicle, he had difficulty maintaining his balance and continued leaning on his vehicle throughout the traffic stop.

■ Furthermore, the endangerment clause does not require that the State prove a person other that the defendant was actually in the path of the defendant's vehicle or in the same area in order to obtain a conviction. *Krohn*, 521 N.E.2d at 377. An officer does not have to wait until the defendant crosses the centerline and adds another victim to the statistics of those who have died in drunk driving accidents. *Id.* Thus, it is sufficient that the defendant's condition renders driving unsafe. *Id.* Staley's intoxication clearly resulted in unsafe driving practices. Deputy Steinkoenig testified that while following Staley, he observed Staley driving fifty-five mile-per-hour in a forty-five mile-per-hour zone and driving without his lights on. *See Boyd v. State*, 519 N.E.2d 182, 184 (Ind.Ct.App.1988) (we found endangerment when Boyd was driving fifty-four mile-per-hour, at night, in a thirty mile-per-hour zone).

In his appellate brief, Staley devotes fifteen pages to explain the differences between the Deputies' testimonies and his own. However, his argument amounts to nothing more than a request to reweigh the evidence, which we will not do. *See Perez*, 872 N.E.2d at 212–13. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). In the case before us, we conclude that the jury was presented with sufficient evidence of probative value that Staley was driving intoxicated and endangering the public, the police, or himself.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly instructed the jury and the State presented sufficient evidence to support Staley's conviction beyond a reasonable doubt.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.