**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARY BETH MOCK**
Law Office of Mary Beth Mock
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| GARRY D. JACKSON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 39A01-1310-CR-457 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE JEFFERSON SUPERIOR COURT
The Honorable James B. Morris, Special Judge
Cause No. 39D01-1302-CM-160

**June 26, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Garry D. Jackson ("Jackson") was convicted after a jury trial of Driving While Intoxicated, as a Class A misdemeanor.[1]  He was subsequently found to be a Habitual Substance Offender,[2] and was sentenced to a total of four years imprisonment.  He now appeals.

We affirm.

**Issues**

Jackson raises four issues for our review, which we restate as:

I.     Whether the trial court abused its discretion when it admitted evidence obtained subsequent to a traffic stop;

II.    Whether there was sufficient evidence to sustain the conviction;

III.   Whether the trial court abused its discretion when it admitted into evidence certain demonstrative exhibits; and

IV.    Whether his sentence was inappropriate.

**Facts and Procedural History**

On February 14, 2013, Indiana State Police ("ISP") Trooper Joseph May ("Trooper May") was riding as a passenger in his ISP-issued unmarked patrol vehicle, while Probationary Trooper Jamie Sperle ("Trooper Sperle") was driving.  As Troopers May and Sperle were driving southbound on U.S. 421 in Madison, they saw Jackson driving a motorized bicycle, also traveling southbound on U.S. 421.  Jackson's vehicle was "weaving dramatically" within its lane of travel.  (Tr. at 308.)

---

[1] Ind. Code § 9-30-5-2(b).

[2] I.C. § 35-50-2-10.

The ISP patrol car and Jackson's vehicle had both been traveling downhill. When Jackson's vehicle reached level ground, Trooper May instructed Trooper Sperle to activate the patrol car's radar system and to measure the speed of Jackson's vehicle. The radar system measured Jackson's motorized bicycle as traveling at 35 miles per hour. The officers continued to follow Jackson, who continued weaving in his lane so significantly that Trooper May thought Jackson would fall over.

As a result of their observations, Trooper May instructed Trooper Sperle to initiate a traffic stop of Jackson's vehicle. Jackson stopped promptly. Upon approaching Jackson, Trooper May detected the odor of alcohol coming from Jackson. Trooper May requested Jackson's consent to several field sobriety tests; Jackson agreed to undergo the tests, and failed all three that Trooper May administered.

Based upon his observations, Trooper May read an advisory concerning Indiana's Implied Consent Law and arrested Jackson. The officers transported Jackson to the Jefferson County Jail and administered a blood alcohol test; Jackson's blood-alcohol content ("BAC") measured as 0.11.

On February 15, 2013, the State charged Jackson with Operating a Vehicle While Intoxicated, as a Class A misdemeanor, and Operating a Vehicle While Intoxicated, as a Class C misdemeanor.[3]

---

[3] I.C. § 9-30-5-1(a).

On February 19, 2013, the State added an additional charge of Operating a Vehicle While Intoxicated, as a Class C misdemeanor,[4] and, based upon prior convictions, further alleged that Jackson was a Habitual Substance Offender.

On July 19, 2013, Jackson filed a motion to suppress evidence obtained as a result of the traffic stop. On July 23, 2013, the trial court conducted a hearing on and denied Jackson's motion to suppress. The case subsequently proceeded to a jury trial from July 24 to 26, 2013, with evidence on the Habitual Substance Offender allegation to be heard separately. During the trial, Jackson timely objected to the admission of evidence obtained from the traffic stop; the trial court overruled the objection. At the end of the trial, the jury found Jackson guilty as charged; in the second phase of the trial, the jury also found Jackson to be a Habitual Substance Offender.

On August 23, 2013, a sentencing hearing was conducted. At its conclusion, the trial court sentenced Jackson to one year of imprisonment for Operating a Vehicle While Intoxicated, as a Class A misdemeanor. The court subsequently enhanced the sentence by three years due to Jackson's status as a Habitual Substance Offender, yielding an aggregate term of imprisonment of four years.

This appeal ensued.

---

[4] I.C. § 9-30-5-2(a).

## Discussion and Decision

### Evidence from the Traffic Stop

Jackson first contends that evidence obtained from the traffic stop was inadmissible because the stop was a violation of his Fourth Amendment rights, and thus the trial court abused its discretion when it admitted that evidence at trial.

Generally, denial of a motion to suppress evidence is reviewed similarly to a challenge to the sufficiency of the evidence. Clark v. State, 994 N.E.2d 252, 259 (Ind. 2013). Where, as here, the case proceeds to trial without an interlocutory review of the trial court's ruling on the motion to suppress, and the defendant timely challenges the admissibility of evidence at trial, an appeal "is best framed as challenging the admission of evidence at trial." Id. Jackson has done so here.

The admission of evidence at trial is generally left to the sound discretion of our trial courts. Id. at 259-60. We review such decisions for an abuse of that discretion. Id. at 260. We reverse only when the admission of evidence is clearly against the logic and effect of the facts and circumstances before the trial court, and the accompanying error affects the substantial rights of a party. Id.

Jackson contends that Troopers May and Sperle lacked the reasonable suspicion necessary to justify their decision to conduct an investigatory stop of his vehicle. The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated." The Fourth Amendment was made binding upon the States by the Fourteenth Amendment.

The Fourth Amendment is not violated by a brief investigatory stop conducted by an officer with a reasonable, articulable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). An officer's "inchoate and unparticularized suspicion or 'hunch'" is not sufficient to support an investigatory stop. Id. at 27. Rather, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." Id. at 21. The Indiana Supreme Court has held that an observed violation of motor vehicle laws is sufficient to give rise to the reasonable suspicion necessary to conduct a traffic stop. Meredith v. State, 906 N.E.2d 867, 870-73 (Ind. 2009).

Here, Trooper May testified to three grounds upon which he based his decision to stop Jackson's motorized bicycle:

1. Jackson was "weaving dramatically" within his lane of travel, so that Trooper May thought Jackson would fall off the vehicle; and

2. If Jackson's vehicle was a motorized bicycle, it was traveling 35 m.p.h., when pursuant to Indiana Code section 9-13-2-109(3), motorized bicycles are limited to a maximum design speed of 25 m.p.h. on a flat surface; or

3. If Jackson's vehicle was a motorcycle, and not a motorized bicycle, there was no license plate displayed on the vehicle as required by Indiana Code section 9-18-2-26.

Based upon Trooper May's training and experience, weaving repeatedly within a lane as Jackson was doing was an indication that Jackson may have been intoxicated. The other

6

two concerns Trooper May articulated are also possible motor vehicle law infractions.[5]  Any one of these would have been a sufficient basis upon which to perform an investigative stop. That Jackson was not cited with a violation of the statutes regarding the speed of a motorized bicycle or failure to display a license plate on a motorcycle does not vitiate the specific, articulable bases upon which Trooper May rested his decision to stop Jackson.  We accordingly find no abuse of discretion in the trial court's decision to admit evidence of Jackson's intoxication obtained as a result of the traffic stop.

Sufficiency of the Evidence

Jackson's next contention on appeal is that there was insufficient evidence to sustain his conviction for Operating a Vehicle While Intoxicated, as a Class A misdemeanor.  Our standard of review in such cases is well settled.  We consider only the probative evidence and reasonable inferences supporting the verdict.  Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess the credibility of witnesses or reweigh evidence.  Id.  We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt."  Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)).  "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict."  Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

---

[5] Trooper May testified that the vehicle Jackson was riding looked like a scaled-down custom "chopper"—in essence, a miniaturized motorcycle—and he was thus unable to determine whether it was properly classified as a motorized bicycle or a motorcycle.  Whichever was the case, there was reason to suspect that either Jackson's speed of travel or the absence of a license plate was a violation of an Indiana motor vehicle statute.

To obtain a conviction of Operating a Vehicle While Intoxicated, as charged, the State was required to prove beyond a reasonable doubt that Jackson operated a vehicle while intoxicated in such a manner that he endangered either himself or the general public. See I.C. § 9-30-5-2; App'x at 24.

Jackson concedes that there was sufficient evidence of his intoxication and operation of a vehicle. He challenges only whether there was sufficient evidence that he endangered himself or someone else. Jackson also acknowledges Indiana case law that holds mere intoxication is not enough to establish this element, but that an individual need not place someone—himself or someone else—in danger of imminent harm to sustain a conviction. Outlaw v. State, 918 N.E.2d 379, 382 (Ind. Ct. App. 2009), adopted, 929 N.E.2d 196 (Ind. 2010); Staley v. State, 895 N.E.2d 1245, 1251 (Ind. Ct. App. 2008). Rather, a defendant need only be intoxicated so that his "condition renders driving unsafe." Staley, 895 N.E.2d at 1251. Thus, we have held that engaging in unsafe driving practices resulting from intoxication is sufficient evidence of endangerment. Id.

The only evidence presented at trial—by either party—was testimony from Trooper May and exhibits associated with that testimony. Trooper May testified that as he and Trooper Sperle followed Jackson, he observed Jackson "weave dramatically" within his lane of travel on at least three separate occasions. Trooper May further testified that Jackson's weaving was so significant that he thought Jackson would fall off the vehicle. And when he administered the field sobriety tests, Trooper May observed that Jackson was unable to

8

comply with the instructions given, even after having the tests demonstrated and being given opportunities to start the tests again.

Jackson tries to distinguish his case on the basis that Jackson did not violate any traffic laws, as in several other Indiana cases. Yet he acknowledges riding his motorized bicycle at a 35 m.p.h. rate of travel on what competent evidence at trial—Trooper May's testimony—characterized as level ground. Given Jackson's weaving in his lane, near-falling, speed of travel, and performance on the field sobriety tests, we conclude that a reasonable fact-finder could infer from Trooper May's testimony that Jackson's operation of the motorized bicycle while intoxicated endangered Jackson. There was not insufficient evidence to sustain the conviction on the question of endangerment.

### Demonstrative Exhibits

We turn next to Jackson's final challenge to his conviction, whether, after suppressing from evidence photographs of Jackson's motorized bicycle, the trial court abused its discretion when it admitted demonstrative evidence depicting a vehicle that bore visual similarities to Jackson's motorized bicycle.

Jackson contends that the photographs used as demonstrative exhibits, which were obtained from the internet the day of trial, were not relevant and that it was error to allow them to be displayed to the jury. Assuming, without deciding, that such was the case, Jackson does not articulate how the use of those demonstrative exhibits was in any manner prejudicial to his substantive rights. Our review of the record also does not indicate how those exhibits might have been prejudicial to Jackson's substantive rights. We accordingly

9

conclude that any error associated with admission of the exhibits was harmless, and we accordingly decline to reverse his conviction on this basis.

## Sentencing

Finally, Jackson contends that the sentence the trial court imposed was inappropriate.

The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. Cardwell v. State, 895 N.E.2d 1219, 1222-25 (Ind. 2008); Serino v. State, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. Cardwell, 895 N.E.2d at 1225.

Jackson was convicted of a Class A misdemeanor, and was found to be a Habitual Substance Offender. A defendant convicted of an A misdemeanor may be sentenced to a term of imprisonment of up to one year. I.C. § 35-50-3-2. A defendant found to be a Habitual Substance Offender faces a sentence enhancement of at least three years and no more than eight years imprisonment. I.C. § 35-50-2-10(f). Thus, Jackson faced a maximum term of imprisonment of nine years. The trial court sentenced Jackson to four years

imprisonment, the aggregation of the maximum term of imprisonment for Jackson's Class A misdemeanor conviction and the minimum enhancement permitted by the Habitual Substance Offender finding.

Jackson contends that "[a]s a matter of public policy, it is excessive for a defendant to be sentenced to a longer term of years on a misdemeanor than he would have on a D felony [which carries a maximum term of imprisonment of three years]." (Appellant's Br. at 19.) He also notes that the prior, unrelated substance offenses in his case were committed in 2003 and 2004, and that he was not operating a motor vehicle that required registration with the Bureau of Motor Vehicles. Thus, Jackson requests that we revise his sentence downward.[6]

The nature of Jackson's offense is unexceptional. He posed an apparent danger only to himself. While he exceeded the legally-permitted design speed for a motorized bicycle on a flat surface, he was not travelling in excess of the posted speed limits for other vehicles in the area.

Jackson's character, however, militates strongly against any downward revision in his sentence. Evidence presented during the sentencing hearing indicates that in addition to prior substance-related convictions, Jackson has previously been convicted of attempted murder, a battery that lead to the death of another person, and battery upon a police officer. In the last of these, Jackson was sufficiently aggressive that he bent a metal police baton. Moreover, testimony was presented that while Jackson was out of jail on bail in the instant offense, he

---

[6] The State observes in its brief that Jackson did not, along with his Appendix, provide a copy of the Presentencing Investigation Report relied upon by the trial court, and asserts that Jackson has waived his sentencing challenge for purposes of this appeal. However, there was sufficient undisputed information presented during the sentencing hearing to support our review, and we conduct our review on that basis.

11

appeared at a bar intoxicated, groped a female bar patron, and was arrested for public intoxication.

We find nothing in the nature of Jackson's offense or in his character that would support a downward revision of his sentence. We do not think his sentence inappropriate.

**Conclusion**

The traffic stop that resulted in Jackson's arrest was supported by reasonable suspicion. There was sufficient evidence to sustain Jackson's conviction. The admission of the demonstrative exhibits was, at most, harmless error. Jackson's sentence is not inappropriate.

Affirmed.

KIRSCH, J., and MAY, J., concur.