Robbie D. **RADFORD**, Appellant–
Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A02–9301–CR–38.

Court of Appeals of Indiana,
Second District.

Jan. 28, 1994.

William F. Thoms, Jr., Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

---

SHIELDS, Judge.

The issue we address is whether the evidence is sufficient to sustain Robbie D. Radford's conviction of disorderly conduct, a class B misdemeanor.[1] Because we conclude that it is not, we reverse the judgment of the trial court and remand the cause with instructions to enter a judgment of acquittal.

## FACTS

Shortly after noon on June 24, 1992, Indiana University Police Officer Leslie Mumford was dispatched to the second floor of University Hospital. A report had been made regarding the possibility that a terminated employee was removing hospital property from her former work area. Office Mumford came upon Radford as she walked down the hallway of the hospital in an area adjacent to the OB–GYN clinic and close to the nursery. The officer asked Radford to step into an alcove off the hallway to avoid obstructing traffic in the busy passageway. He also told her that he needed to see the contents of the box that she was carrying.

Radford loudly protested the "harassment"[2] and refused the officer's requests. Officer Mumford asked Radford to quiet down at least three times, but she refused and "continually got angry and in a very loud and abusive voice." Record at 27. Mumford was charged and convicted of disorderly conduct.

## DISCUSSION

Radford asserts that her conviction for disorderly conduct is not sustained by sufficient evidence. Based upon *Price v. State* (1993), Ind., 622 N.E.2d 954, we agree.

In *Price*, our supreme court addressed a constitutional challenge to the subject statute and a challenge to the sufficiency of the evidence to sustain Price's conviction of disorderly conduct. Our supreme court initially concluded that "federal 'overbreadth analysis' has [not] taken root in the jurisprudence of the Indiana Constitution," *id.* at 958, and,

accordingly, "pass[ed] over Price's contention that [IC 35–45–1–3] is overbroad." *Id.* Then, addressing the challenge based upon Article I, § 9 of the Indiana Constitution, the supreme court concluded that:

> [Section] 9 limits legislative authority over expression to sanctioning encroachments upon the rights of individuals or interference with exercises of the police power.... In furthering [the objectives of the police power the legislature] may subject persons and property to restraints and burdens, even those which impair "natural rights." ... Such a conclusion fails to recognize, however, that in Indiana the police power is limited by the existence of certain preserves of human endeavor, typically denominated as interests not "within the realm of the police power," ... upon which the State must tread lightly, 'if at all.... Accordingly, while violating a rational statute will generally constitute abuse under § 9, the State may not punish expression when doing so would impose a material burden upon a core constitutional value.

*Id.* at 959–60 (citations omitted). The court then assumed that the section of the disorderly conduct statute here in question was rationally calculated to advance the public good. However, because Price's conduct, " 'screaming' profanities while objecting first to [a third party's] arrest and then to her own," *id.* at 957, stemmed from a protest about the legality and appropriateness of the police conduct, the court concluded that while it had "little regard for either Price's contumacious manner or her epithet ... her overall complaint constituted political speech." *Id.* at 961. Having reached that conclusion, the court further determined that § 9 "enshrines political expression as a core value" and, accordingly, it had to determine when enforcement of a rational anti-noise statute amounts to a material burden on that core value. *Id.*

The supreme court rejected the argument that political expression may be unreason-

---

**1.** *See* IC 35–45–1–3 (1988).

**2.** According to Officer Mumford, Radford "very loudly complained about being hassled by me ...

and our department," Record at 20, and "[s]he again loudly refused, told me she was leaving, that I was hassling her...." *Id.* at 22.

ably noisy when it constitutes a "public nuisance."

We thus conclude that treating as abuse political speech which does not harm any particular individual ("public nuisance") does amount to a material burden, but that sanctioning expression which inflicts upon determinable parties harm of a gravity analogous to that required under tort law does not.... We therefore hold that political expression becomes "unreasonably noisy" for purposes of [IC 35–45–1–3(2)] when and only when it inflicts upon determinant parties harm analogous to that which would sustain tort liability against the speaker.

*Id.* at 964.

Radford's speech, like that of Price, protested the legality and appropriateness of police conduct.[3] Therefore, like the speech of Price, Radford's speech was political speech. Also, like the speech of Price, Radford's speech at most comprised a public nuisance and did not inflict upon a determinant party any harm analogous to that which would sustain tort liability.

We reverse Radford's conviction and remand this cause to the trial court with instruction to enter a judgment of acquittal.

FRIEDLANDER, J., concurs.

STATON, J., dissents, with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion for the following reasons:

1. The Majority has misapplied *Price v. State* (1993), Ind., 622 N.E.2d 954, authored by Chief Justice Shepard. (Justice Givan and Justice Dickson dissenting.)

2. The Majority has overlooked the proper initial analysis. It gave little or no consideration to the forum employed by Radford and the character of the property at issue. *Frisby v. Schultz* (1988), 487 U.S. 474, 479, 108 S.Ct.

2495 [2499, 101 L.Ed.2d 420]; *Perry Educ. Ass'n v. Perry Local Educators' Ass'n* (1983), 460 U.S. 37, 44, 103 S.Ct. 948 [954, 74 L.Ed.2d 794].

3. The Majority admits to reweighing the evidence on appeal in Footnote 3 of its opinion. Radford was convicted by the trial court, the finder of fact. The Majority relies on Radford's testimony rather than the testimony of the police officer. Too, as mentioned above, the Majority has not factored in the forum chosen by Radford. In *Price,* the forum was a residential alley with over twenty people, many from the New Years party, talking and conversing with one another. Price's contribution to the volume of noise already generated was characterized as a "fleeting annoyance" by Chief Justice Shepard. By contrast, the forum chosen by Radford was a hospital hallway near the OB–GYN clinic and close to the nursery of newly born babies who could not escape the bombardment of Radford's loud, intrusive speech. A hospital is a forum where the privacy of others is guarded and the volume of disturbing noise limited for the health and safety of those hospitalized.

4. The Majority in its analysis has turned a blind eye to the content-neutral nature of Indiana Code 35–45–1–3(2). In Radford's circumstances, the volume of her speech and the intrusiveness of her conduct in the forum was the issue. The trial court found that the volume and intrusiveness of her speech was unreasonably noisy and convicted her. The evidence supports the judgment of the trial court.

5. Radford's unreasonably noisy speech was abusive and intrusive. Her remarks were not political in nature. Her remarks were those of a person avoiding discovery of wrong doing—defensive and repelling. She had been terminated as an employee of the hospital. The police had been dispatched

---

3. Police Officer Leslie Mumford testified that Radford "very loudly complained about being hassled by me and her department and our [police] department." Record at 20. This evidence is indistinguishable from the defendant's "very loud" objection to the arrest of another person and then herself which was declared by our supreme court to constitute political speech in *Price.*

to intercede before she left with hospital property. She was well aware of where she was and the need for quiet. Her loud and raucous speech was used as a weapon to avoid detainment and discovery. There is no political speech here.

The Majority has misapplied *Price v. State* which is the entire foundation for its reversal of Radford's conviction. There are several reasons for the misapplication of *Price*. First, the Majority has assumed that the forum in *Price* can be superimposed in Radford's circumstances. By doing so the Majority has skipped over the most important part of the analysis. The fora are in considerable contrast.

The forum in *Price* was a residential alley in the 1600 block of Prospect Street in Indianapolis, Indiana. The time was 3:00 a.m. on the morning of January 1 right after a New Year's Eve party. The group was described as a "boisterous knot of quarreling partygoers." *Price, supra* at 956. Besides numerous police, there were approximately twenty spectators—many from the party. Coleman had resisted arrest and after a chase, he had to be subdued. Price's comments regarding the manner in which Coleman was being subdued and placed under arrest were not of a loud enough volume as to be intrusive in this pandemonium setting. It was referred to as a "fleeting annoyance" by Chief Justice Shepard. In *Price*, the Indiana Supreme Court found that there was insufficient evidence to sustain her conviction of disorderly conduct, but it did find her guilty of public intoxication.

By way of contrast, the Radford forum was a quiet hallway of a hospital. She was adjacent to the OB-GYN clinic and close to the recently born baby nursery. There were patients, doctors, and nurses in the hallway. Radford had been fired by the hospital. A policeman had been dispatched to the second floor of the hospital to intercept Radford. He had been told that Radford may be leaving with hospital property. When the policeman stopped Radford, he requested that she step into an alcove where their presence would be less obstructive and less disturbing to those passing by in the hallway. She refused. Three times the policeman asked Radford to quiet down. She refused. She

"continually got angry and in a very loud and abusive voice." Record, at 27. When the policeman asked to look into the box she was carrying, Radford loudly protested. She "very loudly complained about being hassled by me . . . and our department." Record, at 20. She "again loudly refused, told me she was leaving, that I was hassling her. . . ." *Id.* at 22. Radford's abusive and harmful speech invaded the privacy of those patients in the hospital and destroyed their right to a quiet and peaceful environment. Patients with heart conditions and patients with nervous disorders, among others, come to the hospital expecting quietude. The intrusiveness, harm, and abuse in Radford's forum is a thousand times more sensitive than the forum in *Price*—a residential alley at 3:00 in the morning.

The Majority's analysis had to deal with Radford's chosen forum before rushing to a "political speech" conclusion under Art. 1, § 9 of the Indiana Constitution. *Price v. State, supra*, at 23. The "core value" here is to avoid abusive speech and recognize responsibility. The state's interest here is obvious.

I would affirm the trial court.