Eric WHITTINGTON, Appellant–
Defendant Below,

v.

STATE of Indiana, Appellee–
Plaintiff Below.

No. 49A02–9311–CR–00613.

Court of Appeals of Indiana,
Third District.

May 16, 1994.

Rehearing Denied Aug. 22, 1994.

Steven R. Jacobs, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Eric Whittington appeals his conviction for disorderly conduct, a class B misdemeanor.[1] He presents for this court's review the sole issue of whether there is sufficient evidence to sustain the conviction.

We reverse.

On May 12, 1993, Officer Anthony Finnell responded to a report of a domestic dispute at an Indianapolis apartment. Rhonda Whittington (Eric's sister) reported that Whittington had struck her in the abdomen. As Officer Finnell gathered information and summoned an ambulance, Whittington continued to argue with his sister's boyfriend. Whittington was unresponsive to the officer's admonition to "calm down." In a loud and angry manner, Whittington uttered the following phrases: "this is all bullshit" and "fuck this shit." Record, p. 66.

IND.CODE 35–45–1–3(2) provides that a person who "recklessly, knowingly or intentionally makes unreasonable noise and continues to do so after being asked to stop" engages in disorderly conduct. The State charged that Whittington made unreasonable noise by "cursing, yelling and acting in a belligerent manner." Record, p. 7.

Art. I, § 9 of the Indiana Constitution guarantees to the citizens of this state the right of free expression.[2] The legislature's

1. IND.CODE 35–45–1–3.

2. The First Amendment to the United States Constitution (prohibiting laws abridging the freedom

sole authority over expression is to sanction individuals who commit abuse. *Price v. State* (1993), Ind., 622 N.E.2d 954, 958. Abating excessive noise is an objective legitimately pursued by the legislature; I.C. 35–45–1–3(2) is rationally calculated to achieve this objective. *Id.* at 960.

Our supreme court reiterated:

"[I.C. 35–45–1–3(2) ] was adopted to provide relief to people whose privacy or use and enjoyment of land has been intolerably impaired by unwelcome and unreasonable noise. It is expressly aimed at preventing the harm which flows from the volume of the expression and not its substance."

*Id.* at 966.

"Section 35–45–1–3(2) is aimed at the intrusiveness and loudness of expression, not whether it is obscene or provocative."

*Id.* at 960, n. 6.

■ The statutory prohibition against unreasonable noise is content-neutral. Thus, the State could not meet its burden of proof merely by establishing that Whittington issued epithets; it was incumbent upon the State to show that his speech infringed upon a right of peace and tranquility enjoyed by others.

■ A determination of whether loud speech is unduly intrusive and unreasonable requires consideration of the forum employed. *Radford v. State* (1994), Ind.App., 627 N.E.2d 1331, 1333 (Staton, J., dissenting). In *Frisby v. Schultz* (1988), 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420, the Supreme Court stated:

"To ascertain what limits, if any, may be placed on protected speech, we have often focused on the 'place' of that speech, considering the nature of the forum the speaker seeks to employ. Our cases have recognized that the standards by which limitations on speech must be evaluated 'differ depending on the character of the property at issue.' "

*Id.* at 479, 108 S.Ct. at 2500.

The forum employed by Whittington was his own home. Thus, the potential for invading the right of others to peace and quietude of speech) has been incorporated into the Four-

was diminished. Compare: *Price, supra* (involving a crowded residential alley); *Radford, supra* (involving a hospital hallway adjacent to an OB–GYN clinic) and *Stites v. State* (1994), Ind.App., 627 N.E.2d 1343 (involving a residential street).

Officer Finnell, the State's sole witness, testified that Whittington was "loud and boisterous, very upset and cursing." Record, pp. 65–6. However, there is no evidence that Whittington's speech was detectable by anyone outside his residence or that it "intolerably impaired" another person's privacy or use of his land.

We reverse Whittington's conviction and remand with instructions to enter a judgment of acquittal.

FRIEDLANDER, J., concurs in result and files separate opinion;

HOFFMAN, J., dissents and files separate opinion.

FRIEDLANDER, Judge, concurring in result.

I concur in the result reached by the majority for the reasons expressed in *Price v. State* (1993), Ind., 622 N.E.2d 954 and *Radford v. State* (1994), Ind.App., 627 N.E.2d 1331.

Whittington's speech merely protested the "legality and appropriateness of police conduct." *Radford, supra* at 1333. His speech was political in nature and "it did not inflict upon a determinant party any harm analogous to that which would sustain tort liability." *Id.*

I therefore agree that Whittington's conviction should be reversed.

HOFFMAN, Judge, dissenting.

I respectfully dissent. While I agree that the statutory prohibition against unreasonable noise is content-neutral, our supreme court in *Price v. State* (1993), Ind., 622 N.E.2d 954, 960, acknowledged that "abating excessive noise is an objective our legislature may legitimately pursue." In *Price*, the court concluded that the protected speech

teenth Amendment and thus applies to all states.

contemplated in Ind. Const. art. I, § 9, does not protect expression of one person which causes harm to another in a manner consistent with a common-law tort. *Id.* at 964. The court went on to state:

"To attract sanction under the statute, expression must be unreasonably noisy under the circumstances or, when political speech is involved, amount to behavior constituting a private nuisance under traditional common law standards. . . .

. . . The disorderly conduct statute provides fair notice. . . . We also note that Ind.Code Ann. § 35–45–1–3(2) is violated only after a person continues to make unreasonable noise 'after being asked to stop.' This warning requirement provides special protection to persons unaware that their noise level has become unreasonable."

*Id.* at 967.

Although the court in *Price* found that the defendant's expression, which occurred outdoors after a large group had already assembled, was not punishable, the court noted that an individual's comfortable enjoyment of his privacy may be a sufficient intrusion to warrant imposition of criminal liability. *Id.* at 964. Also, the court noted that protection may be extended to situations "in which individuals cannot escape bombardment of their sensibilities which substantially threatens their privacy interests," such as in the "tranquility and privacy of the home." *Id.* at 966.

In the present case, when the police officer arrived at the apartment it was in complete disarray. He discovered Rhonda, who was pregnant, seated on the edge of a bed in the rear bedroom holding her abdomen. She was complaining of pain. Her face was red and her eyes were bloodshot and swollen. Eric smelled heavily of alcohol, his speech was slurred, and he swayed. Eric admitted that he and James had argued and then became physical. Eric contended that Rhonda was accidentally injured during the struggle.

The officer summoned an ambulance for Rhonda. He determined that Rhonda was still quite upset. Rhonda told the officer that Eric had hit her in the abdomen.

While the officer was speaking to Rhonda in the rear bedroom, James and Eric began arguing in the living room. The officer went to the living room in an effort to calm them and separated the two men. After the officer told James to join Rhonda in the bedroom, Eric continued to yell the epithets noted in the majority opinion. The officer asked Eric to quiet down because James could hear and everyone was becoming upset again.

Eric still refused to calm down. He continued to speak in a loud and angry manner. Then the officer placed Eric under arrest.

Here, James and Rhonda were subjected to Eric's tirade under circumstances which did not allow them to escape. Further, the bombardment occurred within the privacy of the home. The officer gave Eric fair notice to refrain from unreasonable noise. After Eric refused, he subjected himself to criminal sanction. Under the facts of the case, I would vote to affirm the conviction for disorderly conduct.