**Robbie D. RADFORD, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

**No. 49A02–9301–CR–38.**

Court of Appeals of Indiana,
Second District.

Sept. 20, 1994.

Transfer Denied Nov. 23, 1994.

---

William F. Thoms, Jr., Indianapolis, for appellant.

---

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION ON REHEARING

STATON, Judge.

On January 28, 1994, this court reversed Robbie Radford's conviction of disorderly conduct, a class B misdemeanor,[1] concluding that Radford's conviction was unsupported by sufficient evidence. *Radford v. State* (1994), Ind.App., 627 N.E.2d 1331.

The State petitioned for rehearing. We grant rehearing, for the reasons expressed in the dissenting opinion, and for an additional reason: Radford's purpose was not that of making an expression concerning a political process. Rather, her purpose was to continue an underlying dispute over property. The mere presence of a law enforcement officer did not convert her speech into political speech. *Price v. State* (1993), 622 N.E.2d 954, 961.[2]

The facts underlying Radford's appeal were stated in the majority opinion:

> "Shortly after noon on June 24, 1992, Indiana University Police Officer Leslie Mumford was dispatched to the second floor of University Hospital. A report had been made regarding the possibility that a terminated employee was removing hospital property from her former work area. Officer Mumford came upon Radford as she walked down the hallway of the hospital in an area adjacent to the OB–GYN clinic and close to the nursery. The officer asked Radford to step into an alcove off the hallway to avoid obstructing traffic in the busy passageway. He also told her that he needed to see the contents of the box that she was carrying.

Radford loudly protested the 'harassment'[3] and refused the officer's requests.

---

1. IND.CODE 35-45-1-3(2).

2. The *Price* court stated: "Of course, the presence of a police officer does not convert a defendant's speech into political expression, particularly in domestic or otherwise existing disputes. *See, e.g.,* [*State v.*] *New,* [1981], 421 N.E.2d at 626 (officer happened upon noisy dispute over ownership of property.") *Id.* at 961, n. 8.

3. According to Officer Mumford, Radford 'very loudly complained about being hassled by me ... and our department,' Record at 20, and '[s]he again loudly refused, told me she was leaving, that I was hassling her....' *Id.* at 22.

Officer Mumford asked Radford to quiet down at least three times, but she refused and 'continually got angry and in a very loud and abusive voice.' Record at 27. [Radford] was charged and convicted of disorderly conduct."

*Id.* at 1332.

Relying upon the recent Indiana Supreme Court opinion in *Price, supra,* the *Radford* majority concluded that Radford's speech "protested the legality and appropriateness of police conduct" and "was [protected] political speech" which "at most comprised a public nuisance and did not inflict upon a determinant party any harm analogous to that which would sustain tort liability." *Id.* at 1333.

Judge Staton dissented:

"I dissent from the Majority Opinion for the following reasons:

1. The Majority has misapplied *Price v. State* (1993), Ind., 622 N.E.2d 954, authored by Chief Justice Shepard. (Justice Givan and Justice Dickson dissenting.)

2. The Majority has overlooked the proper initial analysis. It gave little or no consideration to the forum employed by Radford and the character of the property at issue. *Frisby v. Schultz* (1988), 487 U.S. 474, 479, 108 S.Ct. 2495 [2499, 101 L.Ed.2d 420]; *Perry Educ. Ass'n v. Perry Local Educators' Ass'n* (1983), 460 U.S. 37, 44, 103 S.Ct. 948 [954, 74 L.Ed.2d 794].

3. The Majority admits to reweighing the evidence on appeal in Footnote 3 of its opinion. Radford was convicted by the trial court, the finder of fact. The Majority relies on Radford's testimony rather than the testimony of the police officer. Too, as mentioned above, the Majority has not factored in the forum chosen by Radford. In *Price*, the forum was a residential alley with over twenty people, many from the New Years party, talking and conversing with one another. Price's contribution to the volume of noise already generated was characterized as a "fleeting annoyance" by Chief Justice Shepard. By contrast, the forum chosen by Radford was a hospital

hallway near the OB–GYN clinic and close to the nursery of newly born babies who could not escape the bombardment of Radford's loud, intrusive speech. A hospital is a forum where the privacy of others is guarded and the volume of disturbing noise limited for the health and safety of those hospitalized.

4. The Majority in its analysis has turned a blind eye to the content-neutral nature of Indiana Code 35–45–1–3(2). In Radford's circumstances, the volume of her speech and the intrusiveness of her conduct in the forum was the issue. The trial court found that the volume and intrusiveness of her speech was unreasonably noisy and convicted her. The evidence supports the judgment of the trial court.

5. Radford's unreasonably noisy speech was abusive and intrusive. Her remarks were not political in nature. Her remarks were those of a person avoiding discovery of wrong doing—defensive and repelling. She had been terminated as an employee of the hospital. The police had been dispatched to intercede before she left with hospital property. She was well aware of where she was and the need for quiet. Her loud and raucous speech was used as a weapon to avoid detainment and discovery. There is no political speech here.

The Majority has misapplied *Price v. State* which is the entire foundation for its reversal of Radford's conviction. There are several reasons for the misapplication of *Price*. First, the Majority has assumed that the forum in *Price* can be superimposed in Radford's circumstances. By doing so the Majority has skipped over the most important part of the analysis. The fora are in considerable contrast.

The forum in *Price* was a residential alley in the 1600 block of Prospect Street in Indianapolis, Indiana. The time was 3:00 a.m. on the morning of January 1 right after a New Year's Eve party. The group was described as a 'boisterous knot of quarreling party-goers.' *Price, supra,* at 956. Besides numerous police, there were approximately twenty spectators—

many from the party. Coleman had resisted arrest and after a chase, he had to be subdued. Price's comments regarding the manner in which Coleman was being subdued and placed under arrest were not of a loud enough volume as to be intrusive in this pandemonium setting. It was referred to as a 'fleeting annoyance' by Chief Justice Shepard. In *Price*, the Indiana Supreme Court found that there was insufficient evidence to sustain her conviction of disorderly conduct, but it did find her guilty of public intoxication.

By way of contrast, the Radford forum was a quiet hallway of a hospital. She was adjacent to the OB–GYN clinic and close to the recently born baby nursery. There were patients, doctors, and nurses in the hallway. Radford had been fired by the hospital. A policeman had been dispatched to the second floor of the hospital to intercept Radford. He had been told that Radford may be leaving with hospital property. When the policeman stopped Radford, he requested that she step into an alcove where their presence would be less obstructive and less disturbing to those passing by in the hallway. She refused. Three times the policeman asked Radford to quiet down. She refused. She 'continually got angry and in a very loud and abusive voice.' Record, at 27. When the policeman asked to look into the box she was carrying, Radford loudly protested. She 'very loudly complained about being hassled by me ... and our department.' Record, at 20. She 'again loudly refused, told me she was leaving, that I was hassling her....' *Id.* at 22. Radford's abusive and harmful speech invaded the privacy of those patients in the hospital and destroyed their right to a quiet and peaceful environment. Patients with heart conditions and patients with nervous disorders, among others, come to the hospital expecting quietude. The intrusiveness, harm, and abuse in Radford's forum is a thousand times more sensitive than the forum in *Price*—a residential alley at 3:00 in the morning.

The Majority's analysis had to deal with Radford's chosen forum before rushing to a 'political speech' conclusion under Art. 1, § 9 of the Indiana Constitution. *Price v. State, supra,* at 23. The 'core value' here is to avoid abusive speech and recognize responsibility. The state's interest here is obvious.

I would affirm the trial court."
*Id.* at 1333–34.

■ Art. I. § 9 of the Indiana Constitution guarantees to the citizens of this state the right of free expression.[4] However, the legislature may exert limited authority over expression by sanctioning individuals who commit abuse.[5] *Price, supra,* at 958. Abating excessive noise is an objective legitimately pursued by the legislature; I.C. 35–45–1–3(2) is rationally calculated to achieve this objective. *Id.* at 960.

"[I.C. 35–45–1–3(2) ] was adopted to provide relief to people whose privacy or use and enjoyment of land has been intolerably impaired by unwelcome and unreasonable noise. It is expressly aimed at preventing the harm which flows from the volume of the expression and not its substance."

■ The statutory prohibition against unreasonable noise is content-neutral, in the sense that I.C. 35–45–1–3(2) is aimed at the intrusiveness and loudness of expression, and not at whether the expression is obscene or provocative. *Id.* at 960, n. 6.

Notwithstanding the "neutrality" of the statute's aims, the purpose of the expression at issue is a critical inquiry where an individual defends against application of the statute by claiming that his or her speech is political (i.e., protected) speech. The protection of "purely political" speech is a core value under the Indiana Constitution. *Id.* at 963. As observed by one legal writer, political speech, but not other speech, will trigger a "material burden" analysis, in which there is no weighing of the government interests against the

---

**4.** The First Amendment to the United States Constitution (prohibiting laws abridging the freedom of speech) has been incorporated into the Fourteenth Amendment and thus applies to all states.

**5.** Patrick Baude, *Has the Indiana Constitution Found Its Epic,* 69 IND.L.J. 849, at 852. "The word 'abuse' marks the limit of the free speech right."

speaker's interests on a case-by-case basis. *See* Daniel O. Conkle, *The Indiana Supreme Court's Emerging Free Speech Doctrine,* 69 IND.L.J. 857 (1994). The "material burden" analysis looks only at the magnitude of the impairment:

> "The court's 'material burden' analysis is linked to the overall structure of the Indiana Constitution, which derives from a theory of natural rights and which is 'calculated to correlate the enjoyment of individual rights and the exercise of state power such that the latter facilitates the former.' ... Relying on a public/private distinction drawn from this interpretation of the Indiana Constitution, the court held that the State's content-neutral prohibition on 'unreasonable noise,' as applied to political speech, would impose a material burden if the statute were permitted to reach a 'public nuisance,' that is, conduct that merely 'disturbs the "public order and decorum".' By contrast, no material burden would exist if the statute's application to political speech were limited to 'private nuisances,' nuisances that cause harm to determinable private persons of a gravity analogous to that required under the law of torts."

*Id.* at 860.

■ In essence, where "purely political" speech is involved, the *Price* court limited the application of I.C. 35–45–1–3(2) to that expression which would create a private nuisance.[6] Thus the court advances the idea that fleeting speech may constitute a private "nuisance" although traditionally a "nuisance" is of some duration and requires abatement by an injunction.

Inasmuch as a speaker may blissfully create a public nuisance, free of the threat of reprisal under I.C. 35–45–1–3(2), so long as his (possibly loud, boisterous, obscene, provocative, obnoxious) speech is "political" in nature, it is critical that "political" speech not be given an over-expansive definition.

"Under the reasoning of *Price,* the definition of political speech is crucial. Is speech political only when it explicitly addresses governmental action or governmental policy-making, as in *Price* itself, or does the concept extend to more general social commentary, or perhaps even to scientific or educational speech on issues of public significance? The court in *Price* suggested that 'popular comment on public concerns' would constitute political speech, but this is hardly a clear-cut test. In future cases, the court will be asked to clarify its understanding of political speech, and the court's direction in these cases will help determine the breadth and importance of the *Price* decision."

*Id.* at 861.

■ In Radford's case, a police officer was called to settle an ensuing dispute over the ownership of property. No "purely political" speech was involved. "Purely political" speech does not include speech directed at a police officer who is attempting to perform his duties or enforce a statute. If any speech directed at a police officer could be so characterized, the entire order of society would be turned into a bedlam. "Purely political" speech must be directed to persuade and not to evade the performance of a legal duty by a policeman.

■ The State established that Radford made unreasonable noise and continued to do so after being asked to stop, as required for conviction under I.C. 35–45–1–3(2). Her disorderly conduct conviction was supported by sufficient evidence and is affirmed on rehearing.

BARTEAU, concurs.

FRIEDLANDER dissents & files a separate opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent from the grant of rehearing for the reasons expressed in the original majority opinion appearing as *Rad-*

6. The court purportedly rejects the traditional balancing of competing interests when the freedom of speech is involved. However, some balancing is inherent in the public nuisance/private nuisance scheme: the interest in making political speech supersedes the interest of the public to enjoy quietude; the interest in making political speech which imposes a nuisance upon a determinable individual is subjected to the interest of the determinable individual to enjoy quietude.

*ford v. State* (1994), Ind.App., 627 N.E.2d 1331.

The majority opinion properly applied *Price v. State* (1993), Ind., 622 N.E.2d 954, and it is apparent to me that Radford merely protested the appropriateness and legality of police conduct. That protest amounted to constitutionally protected political speech.

Radford's conviction should be reversed.