Steven M. ROSENBAUM, Appellant–
Respondent,

v.

STATE of Indiana, Appellee–Petitioner.

No. 29A02–0911–CV–1097.

Court of Appeals of Indiana.

July 20, 2010.

Steven M. Rosenbaum, Indianapolis, IN, pro se.

right to remonstrate against Greenwood's proposed annexation on remand.

## OPINION

VAIDIK, Judge.

### Case Summary

A person who knowingly operates a motor vehicle on a public highway in Indiana commits a Class A infraction unless financial responsibility is in effect with respect to the motor vehicle under Indiana Code section 9–25–4–4. Because we find that there is strict liability for the financial responsibility element, it does not matter that Steven Rosenbaum did not know that the insurance had lapsed on the borrowed vehicle he was driving. Finding no merit to his other arguments, we affirm Rosenbaum's infraction.

### Facts and Procedural History

On May 24, 2009, Westfield Police Officer Andrew Gilreath was driving on an access road that connects Greyhound Pass to the 151st Street Walmart parking lot. As Officer Gilreath was driving on the access road, he "notice[d] there was a car traveling through the parking lines parallel with me. It did that for quite some time, at which point there were some trees and center medians in which the person jogged in between them, caused me to brake, got in front of me." Tr. p. 5. Believing that was unsafe, Officer Gilreath pulled over the car.

Officer Gilreath approached the car and identified the driver as Rosenbaum. Rosenbaum told Officer Gilreath that the car he was driving was owned by Jim and Diana Tiffany. *Id.* at 8. Officer Gilreath then asked for the registration and proof of financial responsibility. Rosenbaum provided the registration to the car but no insurance card. Officer Gilreath then asked Rosenbaum the name of his own insurance company, and Rosenbaum responded that he thought he had State Farm. Officer Gilreath returned to his patrol car and called State Farm, who said

that Rosenbaum did not have a policy with them. Officer Gilreath relayed this information to Rosenbaum, and Rosenbaum responded, "[M]aybe you should try under Jim and Dian[a] Tiffany." *Id.* at 6. So, Officer Gilreath called State Farm again, and State Farm responded that the Tiffanys did have a policy with them, but it had lapsed due to nonpayment. Officer Gilreath then issued Rosenbaum a citation for operating a motor vehicle without financial responsibility in effect and had the car towed.

A bench trial was held in September 2009. Rosenbaum proceeded *pro se* at the trial and testified as follows:

> I had borrowed the car from a friend of mine by the name of Diana Tiffany and it was her car. And she had, and you know, I thought she's owned the car for a number of months or almost a year then and I thought for sure she had had insurance. And he asked for insurance and I looked in the car and there was no insurance card and I told him the name, and he looked it up and he said for one reason or another they had let the insurance lapse within the last 45 days. So that was a surprise. . . . So anyway, you know, did I not have insurance, I guess my person that I borrowed the car from did not have insurance, but I didn't know that. . . . I guess it was an oversight on the person that owned the car and I apologize.

*Id.* at 12–14. The court then found that Rosenbaum "did commit the offense with which [he's] charged. I will take into consideration that you were operating a borrowed vehicle upon which you thought there was insurance in effect, so I'll suspend the fine. I'll assess court costs of $114.50 which you have to pay." *Id.* at 14. Rosenbaum then secured counsel and filed a motion to correct error, which the trial

court denied. Rosenbaum, *pro se,* now appeals.

### Discussion and Decision

■ Rosenbaum appeals his Class A infraction for operating a vehicle without financial responsibility in effect. We first note that the State has failed to file an appellee's brief. "The obligation of controverting arguments presented by the appellant properly remains with the State." *Mateyko v. State,* 901 N.E.2d 554, 557 (Ind.Ct.App.2009), *trans. denied.* Where, as here, the appellee fails to submit a brief, the appellant may prevail by making a prima facie case of error, *i.e.,* an error at first sight or appearance. *Id.* Still, we must correctly apply the law to the facts of the record to determine if reversal is required. *Id.*

Rosenbaum makes several arguments on appeal. First, he contends that the evidence is insufficient to prove that he knowingly operated a vehicle without financial responsibility in effect because he was borrowing the car at the time and thought that the owner had insurance. Appellant's Br. p. 3. He also contends that the officer had no legal right to ask for proof of financial responsibility and that he did not operate the vehicle on a public highway.

■ We begin by noting that traffic infractions are civil, rather than criminal, in nature and the State must prove the commission of the infraction by only a preponderance of the evidence. *Slate v. State,* 798 N.E.2d 510, 520 (Ind.Ct.App.2003), *superseded by statute on other grounds.* When reviewing a challenge to the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Rather, we look to the evidence that best supports the judgment and all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value supporting the trial court's judgment, it will not be overturned. *Id.*

■ As for Rosenbaum's argument that he did not know the Tiffanys had let their insurance lapse and therefore the evidence is insufficient to support his infraction, Indiana Code section 9–25–8–2 provides:

(a) A person who knowingly:

(1) operates; or

(2) permits the operation of;

a motor vehicle on a public highway in Indiana commits a Class A infraction *unless financial responsibility is in effect with respect to the motor vehicle under IC 9–25–4–4.* However, the offense is a Class C misdemeanor if the person knowingly or intentionally violates this section and has a prior unrelated conviction or judgment under this section.

(Emphasis added). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b). The general rule is that "[u]nless the statute defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct." *Id.* § 35–41–2–2(d).

■ Here, however, we find that the *mens rea* "knowingly" applies only to the elements of "operates" or "permits the operation of" a motor vehicle on a public highway. We conclude that when the legislature used the word "unless" to separate the element requiring that financial responsibility be in effect from the preceding text, the legislature intended that there be no *mens rea* for this element of the infrac-

tion.[1] The legislature enacted the Financial Responsibility Act to insure that all drivers have insurance in effect on their vehicles. Specifically, the Financial Responsibility Act, Indiana Code article 9–25, "compels motorists to make provisions for the protection of other drivers on the road in order that persons who suffer loss due to the tragedy of automobile accidents shall have a source and means of recovery." *Am. Family Ins. Co. v. Globe Am. Cas. Co.*, 774 N.E.2d 932, 937 (Ind.Ct.App. 2002) (quotation omitted), *trans. denied; see also State Farm Mut. Auto. Ins. Co. v. Gutierrez*, 866 N.E.2d 747, 751 (Ind.2007) ("In Indiana, a person may not operate a vehicle on a public road, street or highway unless he or she continuously maintains proof of financial responsibility. *See* Ind. Code §§ 9–25–4–1, 9–25–4–3, and 9–25–4–4. . . ."); *Allstate Ins. Co. v. Morrison*, 146 Ind.App. 497, 256 N.E.2d 918, 923–24 (1970) ("The dangers of driving uninsured vehicles are obvious. Not only may one be subjected to the risk of a large financial liability at the hands of a negligently injured person, but the opportunity for that other injured party to gain a reasonable amount of damages for his injury is considerably lessened. It is for the benefit of every driver and passenger on our roads today, as well as ourselves, that we carry liability insurance."). To require a driver to "know" that insurance was not in effect before he could be convicted of this Class A infraction would leave a gap in the law, would not accomplish this important legislative purpose, and would lead to absurd results. Because there is strict liability for this element, Rosenbaum's argument that he did not know that the Tiffanys had let their insurance lapse fails.

■ Rosenbaum next argues that Officer Gilreath had no legal right to ask for proof of insurance because nowhere in the Financial Responsibility Act is an operator required to show proof of financial responsibility. In support, Rosenbaum cites *Hammond v. State*, 675 N.E.2d 353 (Ind. Ct.App.1996). *Hammond*, however, does not support Rosenbaum's position. In that case, Hammond was arrested because she was unable to show proof of financial responsibility, *i.e.*, an insurance card.[2] *Id.* at 354. However, Hammond's vehicle was, in fact, insured at the time of her arrest. *Id.* at 355 n.1. On appeal, we held that according to a recent amendment to Indiana Code section 9–25–8–2, failure to show proof of insurance was not a chargeable offense; instead, failure to have insurance in effect was the chargeable offense. *Id.* at 355. Accordingly, we held that Hammond was wrongfully arrested. *Id.*

Contrary to Rosenbaum's argument, *Hammond* does not stand for the proposition that a police officer cannot ask a motorist for proof of financial responsibility. Quite the contrary, officers can ask

---

1. We point out an error in the wording of the statute. Up to the point of the "unless" clause, Indiana Code section 9–25–8–2(a) provides that "A person who knowingly (1) operates or (2) permits the operation of a motor vehicle on a public highway in Indiana commits a Class A infraction[.]" (Formatting altered). Because this act in and of itself cannot be a crime, we encourage the legislature to rewrite the statute with a better placement of the "unless" clause, such as at the beginning of the sentence.

As a final matter, we note that it appears that the legislature did not intend for there to be any strict liability for the Class C misdemeanor. The statute provides that the offense is a Class C misdemeanor "if the person knowingly or intentionally violates this section and has a prior unrelated conviction or judgment under this section." By placing the "knowingly or intentionally" before the violation of the section, the *mens rea* applies to each and every element of the infraction.

2. At the time, the offense was a Class C misdemeanor.

motorists for proof of financial responsibility. Instead, *Hammond* stands for the proposition that a motorist cannot be arrested for or found guilty of operating a vehicle without financial responsibility when the vehicle is, in fact, insured at the time. Because the vehicle in this case was not insured, Officer Gilreath properly cited Rosenbaum for the infraction.

█ Finally, Rosenbaum argues that he was not operating the vehicle on a public highway. *See* Ind.Code § 9–25–2–4 ("'Public highway' means a street, an alley, a road, a highway, or a thoroughfare in Indiana, including a privately owned business parking lot and drive, that is used by the public or open to use by the public"). However, this is merely a request for us to reweigh the evidence, which we will not do. Officer Gilreath testified at trial that the road he pulled Rosenbaum over on, which connects restaurants and stores, was "a public access road, absolutely" and "a dedicated public road in the [C]ity of Westfield" with signs to that effect. Tr. p. 10. The evidence is sufficient to support Rosenbaum's Class A infraction for operating a motor vehicle without financial responsibility in effect.

Affirmed.

NAJAM, J., and BROWN, J., concur.