**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES N. ARNOLD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 16A01-1206-CR-252 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DECATUR SUPERIOR COURT
The Honorable Matthew D. Bailey, Judge
Cause No. 16D01-1104-FD-242

**February 14, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, James N. Arnold (Arnold), appeals his conviction for Count I, being a habitual traffic violator, a Class D felony, Ind. Code § 9-30-10-16(a)(2) and Count II, disregarding a traffic control device, a Class C infraction, I.C. § 9-21-8-41(a).

We affirm.

## ISSUES

Arnold raises two issues on appeal, which we restate as follows:

(1) Whether the State presented sufficient evidence to prove by a preponderance that he disregarded a traffic control device; and

(2) Whether the trial court abused its discretion when it admitted evidence of his driving record, which was discovered following a traffic stop of his vehicle.

## FACTS AND PROCEDURAL HISTORY

Around eight in the morning on April 26, 2012, Sheriff's Deputy Kevin Rohr (Deputy Rohr) of the Decatur County Sheriff's Department drove an unmarked police vehicle southbound on Broadway in Greensburg, Indiana towards the intersection of Broadway and Washington Street. South of the intersection, Broadway consisted of a northbound and a southbound traffic lane. Previously, these two lanes had been divided by a strip of parking places in the middle, but on April 26 neither the parking places nor the lanes were marked due to construction. As a result of the construction, there was also a traffic barrier blocking the southbound lane of Broadway. Two traffic signs were attached to the traffic barrier: a Do Not Enter sign on the far left side of the barrier and a

Road Closed sign in the center of the barrier. The barrier only blocked a portion of Broadway and the rest of the road remained open to traffic.

When Deputy Rohr reached the intersection, he observed Arnold drive southbound on Broadway around the barrier. He initiated a traffic stop of Arnold for ignoring a traffic control device and subsequently learned from checking Arnold's driving record that Arnold was driving with a suspended license.

On April 28, 2011, the State filed an Information charging Arnold with Count I, being a habitual traffic violator, a Class D felony, I.C. § 9-30-10-16(A)(2) and Count II, disregarding a traffic control device, a Class C infraction, I.C. § 9-21-8-41(A). On September 27, 2011, Arnold filed a motion to suppress his driving record on the ground that Deputy Rohr's traffic stop was unlawful and, accordingly, his driving record obtained as a result of the stop was inadmissible. On November 2, 2011, the trial court held a hearing on the motion to suppress, which it denied on November 14, 2011. Subsequently, on February 6, 2012, the trial court held a bench trial and found Arnold guilty of being a habitual offender and entered judgment that he ignored a traffic control device. On February 27, 2012, the trial court sentenced him to two years, with one year to be served in community corrections and one year suspended to probation. It also merged the fines and costs for Count II into the sentence for Count I.

Arnold now appeals. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

Arnold makes two arguments on appeal: that (1) he did not commit a traffic violation when he drove past the traffic barrier on Broadway because the barrier only

3

blocked the portion of the road under construction and the remainder of the road was open to traffic; and (2) because he did not commit a traffic violation, Deputy Rohr did not have sufficient cause to stop his vehicle, and his driving record obtained as a result of the stop was therefore inadmissible. As the issue of whether Arnold committed a traffic violation is integral to both arguments, we will address the judgment entered for disregarding a traffic control device first and then turn to whether the trial court abused its discretion when it admitted the evidence of his driving record.

## I. *Traffic Violation*

We begin by noting that traffic infractions are civil, rather than criminal, in nature and the State need only prove the commission of the infraction by a preponderance of the evidence. *Rosenbaum v. State*, 930 N.E.2d 72, 74 (Ind. Ct. App. 2010), *trans. denied*. We have characterized the preponderance of the evidence standard as requiring that the circumstantial evidence agree and support the hypothesis which it is adduced to prove. *Kempf v. Himsel*, 98 N.E.2d 200, 212 (Ind. Ct. App. 1951). When reviewing a challenge to the sufficiency of the evidence, we will neither reweigh nor judge the credibility of witnesses. *Rosenbaum*, 930 N.E.2d at 74. Rather, we look to the evidence that best supports the judgment and all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value supporting the trial court's judgment, it will not be overturned. *Id.*

Judgment was entered against Arnold for disregarding a traffic control device in violation of I.C. § 9-21-8-41(a), which provides that a person "who drives a vehicle . . . may not disobey the instructions of an official traffic control device placed in accordance

4

with this article unless otherwise directed by a police officer." The Indiana Manual on Uniform Traffic Control Devices for Streets (the Manual) provides guidelines for the use of traffic control devices in Indiana and defines a traffic control device as "a sign, signal marking, or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street." 2008 IMUTCD § 1A.13;[1] *see* I.C. § 9-21-3-1 (specifying that an official traffic control device must conform to the requirements set forth in the Manual). Accordingly, the traffic barrier on Broadway, as well as the Do Not Enter and Road Closed signs attached to the barrier, were traffic control devices.

Arnold's specific argument on appeal is that he did not disregard the traffic barrier and signs because they merely restricted vehicular traffic from entering the construction area on Broadway, which he did not do. In support of this argument, he points to the Manual, which provides that a Road Closed sign should only be used when a road is closed to all traffic, not where, as here, a portion of the road remains open. Similarly, he asserts, it is possible to interpret the Do Not Enter sign as applying exclusively to the construction zone. In response, the State argues that the barrier and signs closed Broadway to all southbound traffic so that Broadway was only open to northbound traffic.

Section 2B.37 of the Manual specifies that a Do Not Enter sign "shall be used where traffic is prohibited from entering a restricted roadway." 2008 IMUTCD § 2B.37. The evidence here indicates that the traffic barrier and Do Not Enter sign were placed

---

[1] For citation purposes, we will refer to the Manual by its acronym, IMUTCD. In addition, we note that although an updated version of the Manual was released in 2011, the 2008 version of the Manual was in effect at the time of Arnold's offense.

directly in the southbound lane so that Arnold had to go around the barrier through the northbound lane in order to proceed southbound through the street. Arnold does not allege, nor is there evidence in the record, that any portion of the southbound lane remained open for traffic. Because the entire southbound lane was restricted, we conclude that the Do Not Enter sign was intended to prohibit all southbound traffic from entering Broadway and was not merely intended to restrict traffic from entering the construction zone. Accordingly, we conclude that the State presented sufficient evidence to prove by a preponderance that Arnold disregarded a traffic control device.[2]

## II. *Admission of Evidence*

Arnold next disputes the trial court's admission of his driving record as violating both the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. He argues that Deputy Rohr did not have sufficient cause to stop his vehicle and the evidence of his driving record discovered pursuant to the stop was thus inadmissible.

Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Joseph v. State*, 975 N.E.2d 420, 424 (Ind. Ct. App. 2012). A trial court has broad discretion in ruling on the admissibility of evidence. *Id.* Accordingly, we reverse a trial court's ruling on the admissibility of evidence only when the trial court has abused its discretion. *Id.* at 425. A trial court has abused its discretion when its

---

[2] Arnold has also provided us with illustrations of various signs that could have been placed on the traffic barrier in order to indicate that southbound traffic was prohibited from entering Broadway. However, because he has not provided us with support for his assertion that these signs were more "appropriate" in this context than a Do Not Enter sign, we are not persuaded by his argument.

6

decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

When reviewing the trial court's decision, we do not reweigh the evidence, and we

consider the conflicting evidence most favorable to the trial court. *Id.* at 424. We also

consider uncontroverted evidence in the defendant's favor. *Id.*

A. *United States Constitution*

The Fourth Amendment to the United States Constitution protects the privacy and

possessory interests of individuals by prohibiting unreasonable searches and seizures.

*Riggle v. State*, 967 N.E.2d 522, 524 (Ind. Ct. App. 2012). It provides:

> The right of the people to be secure in their persons, houses, papers and
> effects, against unreasonable searches and seizures, shall not be violated,
> and no warrants shall issue, but upon probable cause, supported by oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. CONST. amend IV. A traffic stop of a vehicle and temporary detention of its

occupants constitutes a "seizure" within the meaning of the Fourth Amendment.

*Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). Such a seizure is valid under

the Fourth Amendment if it is based on an observed traffic violation or if the officer has

reasonable suspicion that the person detained is involved in criminal activity. *State v.*

*Rhodes*, 950 N.E.2d 1261, 1265-66 (Ind. Ct. App. 2011). A law enforcement officer's

good faith belief that a person has committed a traffic violation will justify a traffic stop,

but an officer's mistaken belief about what constitutes a violation does not amount to

good faith. *Ransom v. State*, 741 N.E.2d 419, 422 (Ind. Ct. App. 2000), *trans. denied*. If

we determine that a seizure has violated the Fourth Amendment, then evidence obtained

as a result of that seizure is inadmissible at trial. *Joseph*, 975 N.E.2d at 426.

7

Because we have already concluded that Arnold committed a traffic violation, we determine that Deputy Rohr's traffic stop did not violate the Fourth Amendment. *See Rhodes*, 950 N.E.2d at 1265-66. Accordingly, we conclude that the evidence of Arnold's driving record obtained as a result of the stop was admissible at trial. *See Joseph,* 975 N.E.2d at 426.

## B. *Indiana Constitution*

Arnold also argues that Deputy Rohr's traffic stop violated his right to privacy under Article I, Section 11 of the Indiana Constitution, which provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." Despite the fact that Article I, Section 11 is nearly identical to the Fourth Amendment, Indiana courts interpret and apply it independently from federal Fourth Amendment jurisprudence. *McLain v. State*, 963 N.E.2d 662, 668 (Ind. Ct. App. 2012), *trans. denied.*

The legality of a government search under our Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Id.* We balance three factors when determining whether a stop was reasonable under Article I, Section 11: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005). However, if a violation of law is established, not merely suspected, a seizure has been upheld, even if the violation is quite minor. *Id.*

Because we have established that Arnold did commit a violation of law when he disregarded the traffic barrier, we determine that Deputy Rohr's traffic stop of Arnold's vehicle was reasonable under Article I, Section 11. *See id.* Accordingly, we conclude that the trial court did not abuse its discretion in admitting the evidence of Arnold's driving record obtained pursuant to the traffic stop.

## CONCLUSION

Based on the foregoing, we conclude that the trial court (1) did not err in finding that Arnold disregarded a traffic control device; and (2) did not abuse its discretion when it admitted evidence obtained pursuant to the traffic stop.

Affirmed.

BAILEY, J. and CRONE, J. concur