## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2018, 11:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Evelyn Lecia Keaton
Law Office of Evelyn Keaton
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Randi Setto,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

September 28, 2018

Court of Appeals Case No.
18A-IF-854

Appeal from the Whitley Superior Court

The Honorable Douglas M. Fahl, Judge

Trial Court Cause No.
92D01-1709-IF-3171

**Brown, Judge.**

[1] Randi Setto appeals the trial court's finding that he disregarded a traffic signal, a class C infraction. He raises two issues which we revise and restate as:

  I.  Whether the evidence is sufficient to prove Setto disregarded a traffic signal; and

  II.  Whether the trial court erred in imposing a fine.

We affirm.

## *Facts and Procedural History*

[2] On September 6, 2017, Indiana State Trooper Joel Lemmon was traveling westbound in the passing lane of US 30 between State Road 109 and Armstrong Drive and attempting to pass Setto's semi-truck when he noticed that they were approaching a mowing crew and slowed down. Setto turned on his turn signal and moved over into the passing lane which "made [Trooper Lemmon] slam on [his] brakes and make evasive action." Transcript Volume II at 6. Trooper Lemmon looked up and observed that the traffic light at Armstrong Drive was red when Setto entered the intersection and proceeded through the red light. Trooper Lemmon initiated a traffic stop and cited Setto for driving through the signal.

[3] On September 11, 2017, the State filed an infraction citation against Setto. On March 21, 2018, the court held a bench trial. On direct examination, Trooper Lemmon testified as follows:

> [Setto] put his turn signal on, moved over, made me slam on my brakes and make evasive action. Also, the guy behind me had to

slow quickly to allow him to come into the passing lane, which he did. Uh, he didn't give me very much room to maneuver. Uh, at that point, I looked up and we approached the Armstrong light, which was red when we entered the intersection, and we proceeded through the red light.

*Id.* Trooper Lemmon testified that they "had a long argument 'cause he wouldn't allow me to explain to him the violations I witnessed. So, it was a long argumentative stop." *Id.* at 6-7. When asked if he could see the lights controlling the intersection, Trooper Lemmon answered: "Yes, sir. I saw it clear as day." *Id.* at 7. He also explained that he pulled off onto the berm. The following exchange then occurred:

> Q And it's my understanding, sir, from that perspective, you were able to clearly see that it was a red light. And, could you . . . could you tell from that perspective, uh, whether or not the vehicle in front of you, that was operated by Randi Setto, uh, entered that intersection, uh, prior to or . . . or after the light had turned red?
>
> A It was prior to and also east of the white line prior to the intersection when it was red.
>
> Q So, he had not made it to through the intersection when the light turned red.
>
> A He was not into the intersection when it was red.

*Id.* at 8. On cross-examination, Setto's counsel asked Trooper Lemmon, "Are you saying that the light turned red after he committed to the intersection or before he went into it?" *Id.* Trooper Lemmon answered: "The light was red prior to him even getting to the white line, which indicates that the intersection

starts at U.S. 30. So, he was east of the light . . . or, the white line when it was red." *Id.* at 9.

[4] After the parties rested, the prosecutor argued that Trooper Lemmon was lucky he did not make contact with the vehicle that cut him off, that Setto could have received additional citations, and that Setto was screaming at a law enforcement officer trying to keep people safe and was not polite. The prosecutor asked the court to impose a maximum fine. Setto's counsel stated that Setto had "something of an animated personality" and that "some of what the officer experienced was Mr. Setto being Mr. Setto . . . ." *Id.* at 11. The court entered judgment against Setto and imposed the maximum fine of $500 fine and court costs of $135.

## *Discussion*

### I.

[5] The first issue is whether the evidence is sufficient to prove Setto disregarded a traffic signal. Traffic infractions are civil in nature. *Rosenbaum v. State*, 930 N.E.2d 72, 74 (Ind. Ct. App. 2010), *trans. denied*. As such, the State must prove the commission of an infraction by a preponderance of the evidence. *Id.* When reviewing a challenge to the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Rather, we look to the evidence that best supports the judgment and all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value supporting the trial court's judgment, it will not be overturned. *Id.*

[6]     Setto appears to argue that there is insufficient evidence to support the infraction because Ind. Code § 9-21-3-7 does not apply to intersections and because Trooper Lemmon provided conflicting testimony regarding the color of the light when he entered the intersection. The State argues that the evidence regarding the color of the light at the time Setto entered the intersection was not conflicting. It also contends that Setto's argument that the statute does not apply to traffic signals at intersections misreads the statute.

[7]     The portions of Ind. Code § 9-21-3-7 relevant to this matter explain the meaning of the green, yellow, and red lights in a traffic signal and set forth the actions that are prohibited by vehicular traffic when those lights are displayed. "Vehicular traffic facing a steady circular yellow or yellow arrow signal is warned that the related green movement is being terminated and that a red indication will be exhibited immediately thereafter." Ind. Code § 9-21-3-7(b)(2)(A). The statute provides that a "[s]teady red indication" means the following:

> (A) Except as provided in clauses (B) and (D), vehicular traffic facing a steady circular red or red arrow signal shall stop at a clearly marked stop line. However, if there is no clearly marked stop line, vehicular traffic shall stop before entering the crosswalk on the near side of the intersection. If there is no crosswalk, vehicular traffic shall stop before entering the intersection and shall remain standing until an indication to proceed is shown.

Ind. Code § 9-21-3-7(b)(3). A person who violates Ind. Code § 9-21-3-7 commits a class C infraction. Ind. Code § 9-21-3-11.

[8]     In support of his argument that the statute does not apply to intersections, Setto points to Ind. Code § 9-21-3-7(b)(5), which provides: "This section applies to traffic control signals located at a place other than an intersection. A stop required under this subdivision must be made at the signal, except when the signal is supplemented by a sign or pavement marking indicating where the stop must be made."

[9]     To the extent that this case requires that we interpret Ind. Code § 9-21-3-7(b), when interpreting a statute, our primary goal is to fulfill the legislature's intent. *Day v. State*, 57 N.E.3d 809, 812 (Ind. 2016). "[T]he 'best evidence' of that intent is the statute's language." *Id.* (quoting *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012)). "If that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it 'does say' and what it 'does not say.'" *Id.* (quoting *State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind. 2003)).

[10]    With respect to Setto's assertion that Ind. Code § 9-21-3-7(b)(3) does not apply to intersections, we disagree. As pointed out by the State, Ind. Code § 9-21-3-7(b)(3)(A) specifically refers to vehicular traffic stopping "before entering the crosswalk on the near side of the *intersection*" and "before entering the *intersection*." (Emphases added). We conclude that the plain language of Ind. Code § 9-21-3-7(b)(3)(A) indicates that it applies to intersections. Based upon the testimony above and in the record, we conclude that evidence of probative value was presented from which the trial court could find that Setto disregarded a traffic signal as a class C infraction.

[11] The next issue is whether the trial court erred in imposing a fine. Setto asserts that he "knows he can be obnoxious and it is his way of being in the world on a regular basis as Mr[.] Setto being argumentative is his normal." Appellant's Brief at 11. He appears to argue that the prosecutor's argument to enhance the fine based upon his argumentative behavior violates his right to free expression. The State argues that Setto's challenge to his fine is waived for failure to make a cogent argument and that, waiver notwithstanding, Setto's claim fails. The State asserts that the record does not show that Setto's behavior was the reason why the court imposed a $500 fine, that Setto's behavior prolonged the length of the stop and increased the risk of danger to passing motorists, the officer, and himself, and that Setto engaged in multiple traffic violations including recklessly pulling his semi-truck over into the passing lane right in front of another vehicle.

[12] Ind. Code § 34-28-5-4(c) provides in part that "a judgment of up to five hundred dollars ($500) may be entered for a violation constituting a Class C infraction." With respect to Setto's free speech argument, Setto cites only *Whittington v. State*, 634 N.E.2d 526 (Ind. Ct. App. 1994), *reh'g denied*, *vacated*, which addressed a conviction for disorderly conduct, and which was vacated by the Indiana Supreme Court. *See Whittington v. State*, 669 N.E.2d 1363 (Ind. 1996). Further, Setto does not point to authority that a trial court must consider certain factors before imposing a fine that is authorized by statute. We cannot say that Setto has demonstrated that the trial court erred when it imposed a $500 fine.

## Conclusion

[13] For the foregoing reasons, we affirm the trial court.

[14] Affirmed.

Altice, J., and Tavitas, J., concur.