## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2017, 7:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Noe Joaquin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 31, 2017<br><br>Court of Appeals Case No.<br>49A02-1701-CR-190<br><br>Appeal from the Marion Superior Court<br><br>The Honorable David Hooper, Magistrate<br><br>Trial Court Cause No.<br>49G08-1604-CM-14854 |

**Crone, Judge.**

# Case Summary

[1] Following a jury trial, Noe Joaquin appeals his conviction for class A misdemeanor operating a vehicle while intoxicated in a manner that endangered a person. He argues that the trial court erred in instructing the jury on endangerment. We hold that Joaquin waived any claim of error and that any error was not fundamental. Consequently, we affirm.

# Facts and Procedural History

[2] Around 9:30 p.m. on April 18, 2016, David Nugent walked across Michigan Street in Indianapolis. The speed limit in that area was thirty-five miles per hour. A van passed by Nugent "fast enough that [he could] feel the breeze coming off and it [blew his] shirt up[.]" Tr. at 31. Nugent "looked down to light a cigarette," and "as soon as [he] lit it [he] heard boom." *Id*. at 26. He turned to see the van hit a parked car so hard that the car "went up, came down[,]" and spun 180 degrees. *Id*. The van flipped onto its side. Nugent ran over and pulled the driver, Joaquin, out of the van. Joaquin "was bleeding around his neck or the back of his head." *Id*. at 28. Nugent used his shirt to try to slow the bleeding. He talked to Joaquin, "trying to keep him responsive." *Id*. A passing police car did "a u-turn[,]" and the officer told Nugent, "[W]e'll take care of it from here." *Id*. An ambulance took Joaquin to the hospital.

[3] Nugent saw that Joaquin's van had struck four parked vehicles, and he observed skid marks that traveled "straight and then went to the right" toward the vehicles. *Id*. at 38. A responding officer noticed that Joaquin's eyes were

"red and glassy[,]" and he "could smell the odor of an alcoholic beverage on [Joaquin's] breath." *Id*. at 90, 66. The officer obtained a warrant for a blood draw, which occurred at 10:42 p.m. Joaquin's alcohol concentration was .189 grams per 100 milliliters of blood, or nearly two and a half times the legal limit.

The State charged Joaquin with class A misdemeanor operating a vehicle while intoxicated in a manner that endangered a person, class A misdemeanor operating a vehicle with an alcohol concentration of .15 or more, and class C misdemeanor operating a vehicle without ever receiving a license. Joaquin pled guilty to the third count before his jury trial. The jury found him guilty on the first count and deadlocked on the second count. The trial court declared a mistrial on the second count, and the State dismissed it. The court sentenced Joaquin to 365 days on the first count, with 363 days suspended to probation, and to a concurrent two-day term on the third count. Joaquin now appeals.

## Discussion and Decision

Joaquin was convicted of operating while intoxicated pursuant to Indiana Code Section 9-30-5-2, which reads, "(a) Except as provided in subsection (b), a person who operates a vehicle while intoxicated commits a Class C misdemeanor. (b) An offense described in subsection (a) is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person." Indiana Code Section 9-13-2-86 defines intoxicated as being under the influence of alcohol or another substance "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties."

[6]     At the close of evidence, the State tendered the following final jury instruction on endangerment:

> The "endangerment" portion of the definition of intoxication does not require that the State prove that a person other than the defendant was actually in the same area as the automobile to support a conviction. State v. Krohn (1988), Ind. App., 521 N.E.2d 374, 377. Rather, it can be established by showing that defendant's condition or driving manner could have endangered any person, including the public, the police, or the driver. Id. Therefore, proof that the defendant's condition renders driving unsafe is sufficient to establish endangerment. Id. State v. Shaw, 595 N.E[.]2d 743, 746 (Ind. Ct. App. 1992), *reh'g denied*

Appellant's App. at 74. Joaquin objected to the instruction because "it's based on facts from a different case." Tr. at 201-02. The trial court stated that it would revise the instruction to read as follows: "[E]ndangerment can be established by showing that the defendant's condition or driving manner could have endangered any person, including the public, the police, or the driver." *Id*. at 202; *see also* Appellant's App. at 62 (court's final instruction number 4). Joaquin did not object to the revision. The court then gave the parties an opportunity to review all of its proposed final instructions and asked if they had any objections. Joaquin responded, "No." Tr. at 204.

[7]     On appeal, Joaquin contends that the trial court's instruction "is an incorrect statement of the law" because "it is from a case that has been abrogated by statute." Appellant's Br. at 11. In response, the State argues that Joaquin has waived any claim of error because he failed to object to the trial court's revision

of the State's instruction. We agree. "It is well settled that the failure to object to a jury instruction given by the trial court waives the issue for review." *Quiroz v. State*, 963 N.E.2d 37, 42 (Ind. Ct. App. 2012), *trans. denied*.[1] The State also argues waiver based on Joaquin's new claim of instructional error on appeal. "It is well-settled law in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal." *Gill v. State*, 730 N.E.2d 709, 711 (Ind. 2000). Consequently, Joaquin "has waived this claim of error for appellate review" on this ground as well. *Id*.

[8]     Joaquin argues that even if we find waiver, we should reverse his conviction because the trial court committed fundamental error in giving the instruction. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged error is so prejudicial to his rights as to make a fair trial impossible. *Carter v. State*, 31 N.E.3d 17, 27 (Ind. Ct. App. 2015), *trans. denied*. "In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial." *Baker v. State*, 948 N.E.2d 1169, 1178-79 (Ind. 2011). Harm is not shown by the fact that the defendant was ultimately convicted, but by whether his right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id*. at 1179. We

---

[1] Joaquin did not indicate whether he objected to the State's instruction in whole or in part, nor did he indicate that the trial court's revision failed to alleviate his concerns. One could reasonably infer that Joaquin was satisfied with the revision because he stated that he had no objection to the court's proposed instructions.

will not reverse for an instructional error where the conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Hayden v. State*, 19 N.E.3d 831, 838 (Ind. Ct. App. 2014), *trans. denied* (2015).

[9] To the extent the instruction suggests that endangerment could be established by evidence of Joaquin's intoxicated condition alone, we agree with Joaquin that it is problematic. *See Outlaw v. State*, 929 N.E.2d 196, 191 (Ind. 2010) (affirming this Court's rejection of State's argument that "evidence of 'intoxication' should be sufficient to prove 'endangerment'" under current version of Ind. Code § 9-30-5-2). But the State presented overwhelming evidence that Joaquin's driving manner could have endangered—and did in fact endanger—any person, including himself. On a stretch of Michigan Street with a speed limit of thirty-five miles per hour, Joaquin drove his van past Nugent fast enough to generate a breeze and blow Nugent's shirt up. Joaquin then plowed his van into a parked car with enough force to lift the car in the air and spin it 180 degrees. The van flipped onto its side, and Nugent had to pull the bleeding Joaquin from the vehicle. Based on this evidence, the jury could not properly have found anything other than that Joaquin's driving manner endangered himself. Therefore, we affirm his conviction.

[10] Affirmed.

Barnes, J., concurs.

Baker, J., dissents with opinion.

| | |
|---|---|
| Noe Joaquin, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 49A02-1701-CR-190 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff.* | |

**Baker, Judge, dissenting.**

[11] I respectfully dissent. First, with respect to waiver, a party seeking to preserve an alleged instructional error for appeal must identify the specific grounds for objection at trial. *Kane*, 976 N.E.2d at 1231. The purpose of this requirement is to alert the trial court and avoid potential error. *Id.* In *Kane*, the defendant argued on appeal that a jury instruction was an incorrect statement of law. At trial, however, the defendant's attorney had made only a "general objection" to the instruction. *Id.* The trial court then discussed the instruction with the

parties and ultimately rewrote it. In finding that the defendant's general objection preserved the issue for appeal, our Supreme Court emphasized that "the trial judge did not simply adopt the State's proposed instruction; rather, he changed it to mirror language that, in his estimation, had received judicial approval . . . ." *Id.* at 1231-32. In other words, where a general objection results in the trial court giving "'specific consideration to whether the proposed instruction was a correct statement of law,'" the error is preserved. *Id.* at 1231 (quoting *McDowell v. State*, 885 N.E.2d 1260, 1262 (Ind. 2008)).

[12] In this case, Joaquin's attorney did not object with specificity, indicating an argument that the instruction was an incorrect statement of the law. Notwithstanding the lack of an objection to that specific effect, however, the trial court clearly considered the issue, even rewriting the State's proffered instruction in an attempt to ensure that the instruction was a correct statement of law. Under these circumstances, I would find that the issue was preserved for appellate review.

[13] Even if the objection was insufficient to preserve the issue, however, I would find that the erroneous jury instruction constituted fundamental error because it was "so prejudicial to the rights of a defendant as to make a fair trial impossible." *Rosales v. State*, 23 N.E.3d 8, 11 (Ind. 2015). The State's proposed jury instruction was taken from *State v. Shaw*, which applied and interpreted an old and substantively different version of the relevant statute. 595 N.E.2d 743 (Ind. Ct. App. 1992), *superseded by statute*). Before 2001, the offense of operating a vehicle while intoxicated was defined as follows: "A person who operates a

vehicle while intoxicated commits a Class A misdemeanor." I.C. § 9-30-5-2 (2000). "Intoxicated," in turn, was defined as being under the influence of alcohol or another substance "such that there is an impaired condition of thought and action and the loss of normal control of a person's faculties *to such an extent as to endanger any person*." I.C. § 9-13-2-86 (2000) (emphasis added). Before 2001, therefore, endangerment was part of the intoxication element rather than a separate element, and the State could prove endangerment merely by proving that the defendant was intoxicated. *E.g.*, *Fletcher v. State*, 649 N.E.2d 1022, 1024 (Ind. 1995) (holding that the defendant's admission of operating while intoxicated "amounts to an admission that his condition was such as to endanger others on the road").

[14]   In 2001, the General Assembly "substantially altered the OVWI statutes by redefining intoxication and establishing two separate misdemeanor classes for operating a vehicle while intoxicated." *Outlaw v. State*, 918 N.E.2d 379, 381 (Ind. Ct. App. 2009), *expressly adopted by Outlaw v. State*, 929 N.E.2d 196, 196 (Ind. 2010). The 2001 amendments made "endangerment" a separate element that is necessary to elevate the offense from a Class C to a Class A misdemeanor and removed the requirement of endangerment from the definition of intoxication. *Id.* at 381. The current version of the statute, which was in effect at the time Joaquin committed the alleged offense, provides that operating a vehicle while intoxicated is a Class A misdemeanor "if the person operates a vehicle in a manner that endangers a person." I.C. § 9-30-5-2(b).

It is well established that, "[b]y definition, the current statute requires more than intoxication to prove endangerment." *Outlaw*, 918 N.E.2d at 382. Instead, the State is required to present evidence that the defendant operated the vehicle in a way that endangered a person—the mere *condition* of being intoxicated is insufficient. *Id.*

Here, the jury was instructed that endangerment can be established "by showing that the *defendant's condition* or driving manner could have endangered any person, including the public, the police, or the driver." Appellant's App. p. 62 (emphasis added). This instruction is an incorrect statement of the law, as it instructs the jury that it could find that Joaquin endangered a person merely based upon his condition of intoxication.

The State directs our attention to *Staley v. State*, 895 N.E.2d 1245, 1250 (Ind. Ct. App. 2008), which found no error with respect to a jury instruction almost identical to the instruction in the present case. The *Staley* Court relied on the 2003 decision of *Slate v. State*, 798 N.E.2d 510, 515 (Ind. Ct. App. 2003), *superseded by statute*, noting that "[a]s Staley does not present us with any new arguments that persuade us to revisit our opinion in *Slate*, we conclude, in light of *Slate*, that the trial court tendered a proper instruction to the jury." *Id.* at 1250. The *Outlaw* Court, however, expressly disapproved of and declined to follow *Slate* and other cases with similar holdings:

> We acknowledge that prior decisions of this court have suggested that a showing of intoxication, without more, is adequate to prove endangerment. *See, e.g.*, *Slate v. State*, 798 N.E.2d 510, 515

(Ind. Ct. App. 2003) (stating that "the endangerment element . . . indicates the level of impairment and the extent of lost faculties that must be shown to establish intoxication and to obtain a conviction"); *Dunkley v. State*, 787 N.E.2d 962, 965 (Ind. Ct. App. 2003) ("The endangerment element was further established by [the defendant's impaired] condition"). *Insofar as those cases conflate the definition of endangerment with that of intoxication, the amended statutes supplant them and, as such, we do not follow them.*

(Emphasis added). As noted above, our Supreme Court expressly adopted the opinion of this Court in *Outlaw*. 929 N.E.2d at 196. Consequently, *Outlaw* overruled *Slate* and *Staley*, and I would decline to follow that line of cases.

[18] When an instruction misstates the law, we must "presume the error affected the verdict" and reverse "unless the verdict would have been the same under a proper instruction." *Kane*, 976 N.E.2d at 1228. Put simply, "reversal is required if the jury's decision may have been based upon an erroneous instruction." *Hernandez v. State*, 45 N.E.3d 373, 378 (Ind. 2015).

[19] At trial, Joaquin's attorney argued that the State had not proved beyond a reasonable doubt that Joaquin had operated the vehicle in a manner that endangered a person. Nugent was not looking at the crash when it happened, and he testified that Joaquin's driving was "normal" and "every day" for that street. Tr. p. 31. There was no expert investigation of the crash or skid marks, nor were there photographs of the crash site.[2] Consequently, I take issue with

---

[2] The State argues that "[i]f Defendant had a rational explanation for driving in this manner, then he was free to present it to the jury to defend against what was presumptively unsafe driving . . . ." Appellee's Br. p. 16.

the majority's characterization of the evidence on this issue as "overwhelming[.]" Slip op. p. 6. Because the jury's decision may have been based on the erroneous instruction, I believe we are compelled to reverse.

[20] The crux of Joaquin's defense was that the State did not prove that the accident was caused by Joaquin's driving manner; in other words, the State did not prove that Joaquin's driving manner endangered a person. But the jury instruction on endangerment permitted the jury to side-step the issue and find Joaquin guilty simply because of his intoxicated condition. Therefore, the jury could have accepted all of Joaquin's legal and factual arguments about endangerment but still have found him guilty based solely on his intoxication. *See Hernandez*, 45 N.E.3d at 378 (reversing based on an erroneous jury instruction because it permitted the jury to find the defendant guilty even if the jury believed his defense). In other words, I cannot say with certainty that the verdict would have been the same under a proper instruction. Therefore, I believe we should reverse.

---

Obviously, however, the defendant is not required to prove his innocence—it is the *State's* burden to prove his guilt beyond a reasonable doubt.